**UNITED STATES of America ex rel. Morris SATZ, Appellant,**

v.

**Vincent R. MANCUSI, Warden of Attica State Prison, Attica, New York, Appellee.**

**No. 632, Docket 31671.**

United States Court of Appeals Second Circuit.

Argued June 10, 1969.

Decided July 25, 1969.

Arthur J. Murphy, Jr., New York City (Milton Adler, The Legal Aid Society, New York City), for appellant.

Maria L. Marcus, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, and Samuel A. Hirshowitz, First Asst. Atty. Gen., State of New York, on the brief), for appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

Appellant Morris Satz was indicted in 1960 for the crimes of arson in the third degree and burglary in the third degree,

allegedly having set fire to an American Legion Post in Buffalo, New York. At the first trial, the jury reported that it was unable to reach a verdict. A second jury, however, found appellant guilty as charged and on June 5, 1963 he was sentenced to concurrent terms of three and one-half to seven years on the arson count and two and one-half to five years on the burglary count. The conviction was affirmed by the Appellate Division (People v. Satz, 23 A.D.2d 536, 255 N.Y.S.2d 825 [4th Dept. 1965]) and the New York Court of Appeals denied leave to appeal on February 18, 1965. No petition for a writ of certiorari to the United States Supreme Court was filed.

The evidence introduced at the trial established that at 5:00 a. m. on August 27, 1960 Richard Sinicki, Peter Filippi and Robert Green, starting out on a fishing trip, saw a sudden flash of light from an American Legion Post in Buffalo. Green alighted from the car, pulled a fire alarm and approached the burning building with a view to determining whether anyone was trapped inside. Sinicki, who also approached the building, noticed a man later identified as appellant Satz toward the rear of the building. Appellant's clothes, face and hands were badly burned and he was bleeding. He said that he was hurt and needed an ambulance. He also stated that he had heard screams from inside the building and had entered the structure in an attempt to give aid.

Just prior to the arrival of the firefighting equipment, appellant requested that his 1954 stationwagon be moved to make room for the approaching engines. After Filippi complied with this request, it was discovered that in the stationwagon lay two cans, one of which contained gasoline, a blanket and some building tiles. Appellant, after being restrained by firemen from rushing back into the burning building, was taken to a nearby hospital in critical condition.

The fire was extinguished in about ten minutes, with the damage confined to the third floor of the building. Firemen and policemen testified that after the fire was out, they entered the building and smelled the odor of gasoline which became stronger as they approached the third floor. A quart can which smelled of gasoline was found on the third floor. The opinion of firemen was that the blaze had been a flash fire and that the gasoline fumes had caused the explosion. There was also evidence that newspapers had been strewn about the stairways in the building. Other circumstantial evidence linking appellant to the explosion was introduced, but need not be detailed here.

In connection with the 1954 stationwagon, one Frank Brodzik testified that Satz had borrowed the car at 2:45 a. m. on the night in question for the alleged purpose of having a date with a girl. Brodzik further testified that he was a plumber and did not have any cans of gasoline in the back of his stationwagon. Specifically, he denied that any cans of gasoline were in the car when appellant borrowed it.

During the course of the trial, at the time of his summation, the prosecutor made the following remarks:

"He [defense counsel] further said that the evidence was going to show that this defendant Satz was going to use this automobile, and the purpose of it was that Satz had a date with a girl. Any proof of that in this lawsuit? *Only what the defendant said, and he never once vouched for his credibility.*" (Emphasis supplied.)

Defense counsel made no objection to this remark although he objected to other aspects of the prosecutor's summation. The judge subsequently charged the jury that the appellant did not have to take the stand and that "his failure to take the stand is no evidence of his guilt. The People must prove his guilt independently." No exception was made to the Judge's charge. The jury handed down a verdict of guilty.

Following his unfruitful appeals through the State courts, appellant sought a writ of habeas corpus in the United States District Court for the

Western District of New York. The basis of the petition was the claim that the above *italicized remark* directed the jury's attention to the failure of appellant to take the witness stand, and therefore violated his Fifth Amendment rights under the rule of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The district court, Henderson, Judge, denied appellant's application but granted a certificate of probable cause on May 12, 1967.

The *Griffin* case, *supra*, holds that "* * * the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." 380 U.S. at 615, 85 S.Ct. at 1233. Appellant argues that the statement made by the prosecution, reproduced above, falls within the *Griffin* rule and requires that the writ be issued. Respondent, in turn, asserts that the remark in question cannot properly be characterized as a comment on appellant's failure to take the witness stand. We agree with the latter position.

The district court was justified in characterizing the prosecutor's remark as "most oblique," and in concluding that "it would appear improbable that the jury, unlike defense counsel and the Court, grasped its possible import." The prosecutor, again, having called attention to defense counsel's opening remark that it would be shown that appellant was going to use the stationwagon for a date with a girl, said: "Any proof of that in this lawsuit? Only what the defendant said, and he never once vouched for his credibility."[1] In context, the words "he never once vouched" could well be taken as a reference not to the appellant but to his trial counsel or to his failure to present supporting proof.

Furthermore, counsel for the defense made no objection at the time of the allegedly improper remark. Under the rule of United States v. Nasta, 398 F.2d 283, 285 (2d Cir. 1968), such an objection must be made immediately:

"Finally, where as here the comments are at most ambiguous, an instruction to the jury will suffice to avoid possible prejudice. It is appropriate, therefore, to require counsel to make an immediate objection and request curative instructions. Since counsel did not do this but merely moved for a mistrial at the conclusion of the summations, appellant is precluded from raising the issue now. [Citing cases.]"

In the case at bar, the defense did not even do what had been done in *Nasta*, namely, to call for a mistrial at the conclusion of the summation. A motion was made after the verdict to set it aside because of "certain errors" committed, but no specific reference was made to the passage here in question. The judge did give careful instructions to the jury on the issue of self-incrimination, which instructions must be viewed as having cured any misunderstanding held by jury members who may have interpreted the remark in question as a comment on the failure to take the stand.

Finally, even if appellant's characterization of the prosecutor's remark were to be accepted, that comment would be harmless error in the context of the entire record. The evidence against appellant was so overwhelming that the error, if it were error, would be "harmless beyond a reasonable doubt." United States v. Nasta, 398 F.2d at 285, citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See also Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (decided June 2, 1969).

Affirmed.

---

1. The portion of the prosecutor's summation focused upon in this appeal becomes all the more oblique when viewed in context as a comparatively insignificant and unemphasized passage in the lengthy summation.