UNITED STATES of America ex rel.
Gerard E. CRAFT, Petitioner,

v.

Eugene LEFEVRE, Superintendent, Clinton Correctional Facility, Dannemora, New York, Respondent.

No. 76 Civ. 5464–CSH.

United States District Court,
S. D. New York.

May 9, 1977.

Gerard E. Craft, pro se.

Louis J. Lefkowitz, Atty. Gen., New York City, for respondent; Kevin J. McKay, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

### HAIGHT, District Judge:

Petitioner Gerard E. Craft is presently incarcerated in the Clinton Correctional Facility, Dannemora, New York. He is serving a sentence of six to twenty years, imposed for a conviction of robbery in the first degree, with a concurrent sentence of up to four years, imposed for a conviction of grand larceny in the third degree. These prison terms were imposed on September 6, 1974 by the Hon. Angelo Ingrassia, Orange County Court. Petitioner had been convicted by a jury on both counts. Petitioner now contends that his confinement is in violation of the Constitution of the United States, and he presents two arguments in support of his claim. First, petitioner alleges that certain statements made by the prosecutor in his summation were improper, and thus denied petitioner a fair trial, which is guaranteed to all state court defendants under the Fourteenth Amendment. Second, petitioner alleges that the trial court erred in admitting testimony about an out-of-court "show-up" identification of the petitioner by the victim of the crime. This identification occurred approximately one hour after the crime.

For the reasons stated below, the application for writ of habeas corpus is denied.

## THE FACTS

On February 21, 1973, at approximately five o'clock in the evening, a black male dressed in blue denim pants and jacket, entered a gift shop in Pine Bush, New York. The shop was owned and operated by a Mr. Samuel Anderson. The denim-clad man, ostensibly a customer, engaged in a few minutes of conversation with Mr. Anderson. Shortly thereafter, the supposed customer produced a knife, pulled it on Mr. Anderson, and demanded that he "get back to the cash register, give me the money." Anderson complied with this order, and, after reaching the cash register, and after having the knife put to his throat, he extracted between fifty and sixty dollars, which he turned over to the robber.

The robber then forced Anderson to the rear of the store, at knifepoint, where he attempted to tie him up. Instead of actually doing so, the robber ordered Anderson to enter a bathroom. However, before Anderson did so, the robber took from Anderson ten to twelve dollars in cash, a card case containing credit cards, a change purse, and the key to the store, which was on a key chain. After that, the robber ordered Anderson into the bathroom, slammed the door, placed some objects against it, and told Anderson to remain in the bathroom for four or five minutes or he would kill him. Anderson remained in the bathroom between five and ten minutes, then left. When he got to the front of the store, he saw that his phone line had been cut. He went next door and asked someone to call the police. The police arrived soon afterward, and Anderson described the robbery. The police and Anderson entered a police car and drove towards Walker Valley, New York. As the police car proceeded along Route 52, Anderson noticed a group of people standing around on the right side of the road. This group included some police officers. Anderson indicated that the man who robbed him was standing behind the hood of a car; this man was the petitioner, Gerard Craft. The police car stopped, and Anderson approached the vehicle where the alleged robber stood. There he observed on the hood of the car several items which had been taken from him, as well as the knife which the robber had used.

At trial, a taxi cab driver testified that he had picked up the petitioner at a gas station in Pine Bush, at about five-twenty to five twenty-five in the afternoon. The

taxi cab driver testified that petitioner was dressed in dungaree pants and jacket, and that he had dropped petitioner off at the Walker Valley Post Office.

Further trial testimony was given by Investigator Francis Jennings of the New York State Police, who stated that he had received a report relating the commission of a robbery at Anderson's store, and that he had gone to Walker Valley to look for a suspect. Jennings testified that at about five fifty p. m. he had observed petitioner walking west on Route 52, dressed in dungaree pants and jacket and a dark colored shirt. Jennings testified that he had approached the petitioner, told him to put his hands on the police car, searched him, and found the various items which Anderson later identified as fruits of the robbery. Jennings also testified that, in addition, he had found both the knife which Anderson had identified as the weapon used in the crime, and a wallet containing over seventy dollars.

The petitioner testified at trial on his own behalf, stating that he had hitchhiked from Highland Falls to Pine Bush to attend a party, and that when he had reached Pine Bush, he had noticed a rip in his pants. He testified that he had gone to buy a new pair of pants, and after completing the purchase, had taken a taxi cab and given the driver directions. He testified that the cab ran out of gas, and had dropped him off, and that after walking for a while, he had discovered the items which were later found in his possession. Petitioner stated that he had had money on his person that day, but did not explain the source. He denied entering Anderson's store or robbing Anderson.

Karen Neuman, a sales clerk at Seymour's, a variety store in Pine Bush, testified that the petitioner had entered the store, bought the pants, and left without incident. She had been called as a defense witness, and stated that she had conversed with petitioner at the time of the sale, and that he had been friendly.

Petitioner was convicted of robbery in the first degree and grand larceny in the

third degree. On October 7, 1975, the Appellate Division, Second Department, unanimously affirmed. Leave to appeal to the New York State Court of Appeals was denied on December 17, 1975. Petitioner has exhausted his available state remedies, and pursuant to 28 U.S.C. § 2254(b), is properly before this Court with his application for writ of habeas corpus.

## ISSUES

*I. The Claim of Improper Summation by the Prosecutor*

Petitioner alleges that certain statements in the prosecutor's summation were improper and thus denied him a fair trial. The actual words complained of dealt with the testimony of the sales clerk, Karen Neuman, and were as follows:

"Mr. Shapiro pointed out that Mr. Craft was a very nice man when he was in Seymour's Variety Shop. The young lady talked to him and everything. Well, I submit to you that he probably went into that shop, probably to rip that store off but when he saw there were more than one person in there, there was more than the proprietor, there was this young lady then the person that he paid the money to, I believe the name was Seymour Cohen or Seymour Kline and there were probably other people in the store, that he had second thoughts and he went into Sam's and waited for the two girls to leave. Then he was there alone and he decided to hold up the store." (Tr. 170–171).

Petitioner contends that the effect of this statement was to imply that he had an intention to commit a robbery where no such evidence was adduced at trial. Petitioner argues that it was unfair to implant in the minds of the jury an unsupported suggestion of criminal intent, where that issue was one of the matters the jury had to resolve.

██ When a federal court reviews a habeas claim of allegedly improper statements made in a prosecutorial summation in a state court trial, it must apply a stan-

dard somewhat different than if it were making a habeas review of a federal trial. It would appear that an improper statement by a federal prosecutor would be stronger grounds for habeas relief, in and of itself, than in a federal collateral review of a state trial. *See, United States v. Grunberger*, 431 F.2d 1062, 1068 (2d Cir. 1970), *United States ex rel. Haynes v. McKendrick*, 350 F.Supp. 990, 997 (S.D.N.Y. 1972), *aff'd*, 481 F.2d 152 (2d Cir. 1973). When a federal court undertakes a collateral review of a state prosecutor's summation, the test to be applied is one of due process, and the question the court should ask is whether the improper statement was so violative of due process, and the concepts of justice which constitute due process, that the state court defendant was denied a fair trial, as guaranteed under the Fourteenth Amendment. This is the so-called "fundamental fairness" rule discussed in *United States ex rel. Castillo v. Fay*, 350 F.2d 400, 401 (2d Cir. 1965), *cert. den.*, 382 U.S. 1019, 86 S.Ct. 637, 15 L.Ed.2d 533 (1966). *See also, United States ex rel. Haynes v. McKendrick, supra*, at 350 F.Supp. 997, aff'd, 481 F.2d at 157–158.

■ Applying the "fundamental fairness" test, I do not find that the remark objected to created, as a demonstrable reality, such essential unfairness to petitioner, that his application for habeas corpus relief should be granted on a federal constitutional ground. There was an overwhelming amount of admissible testimony and evidence which linked petitioner to the crime charged, and which enabled the jury to properly infer the requisite criminal intent. *See, United States ex rel. Serrano v. Smith*, 394 F.Supp. 391, 392 (S.D.N.Y.1975). Where there is overwhelming evidence of a petitioner's guilt, a federal court, on collateral review, may properly determine that if the prosecutor's remarks were improper, it was harmless error beyond a reasonable doubt, under the doctrines of *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) and *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See, United States ex rel. Satz v. Mancusi*, 414 F.2d 90 (2d Cir. 1969).

■ There exists a separate ground for denying habeas relief in the present case. The prosecution may properly rebut defense arguments, including matters concerning the testimony of a witness. The right of the prosecution to rebut an argument raised by the defense, even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts, falls within the ambit of the doctrine of fair rejoinder. *See United States v. LaSorsa*, 480 F.2d 522 (2d Cir. 1973), *United States ex rel. Leak v. Follette*, 418 F.2d 1266, 1269 (2d Cir. 1969). When petitioner offered witness Karen Neuman to demonstrate petitioner's lack of criminal intent, the door was opened for the prosecution to rebut that contention.

■ Finally, while the State of New York has conceded that petitioner has exhausted available state court remedies in terms of state appeals, this does not excuse petitioner's failure to object to the summation remarks at the trial. While the failure to make such objection is not a mandatory foreclosure of habeas relief in a situation such as the present case, (*see, United States ex rel. Haynes v. McKendrick, supra*; failure to object to summation did not prevent issue from being raised on habeas because it was cited in the appellate brief), the Supreme Court is now adopting a policy of refusing habeas relief on certain claims where the state court defendant did not object at trial. *See, Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), where the defendant had appeared at trial in prison garb, and failed to object; the Court said habeas relief was not merited because petitioner failed to show that a timely objection would not have been sustained, and because the practice of the particular judge in question was to allow any accused who so desired to be tried in civilian clothes. *Estelle v. Williams* does not mandate dismissal where there was no timely objection, but it is surely a factor to consider in habeas motions.

Thus, in light of the overwhelming evidence of petitioner's guilt, the petitioner's

opening of the door for the prosecutor's rebuttal of the testimony put forth by defendant's counsel, and the failure of petitioner to object at trial, the application for writ of habeas corpus is denied. Fundamental fairness was not violated by the challenged remark.

## II. The Out-of-Court Identification

Petitioner contends that the trial court erred in not granting the defense motion to suppress Mr. Anderson's testimony about the out-of-court "show-up" identification described previously. This claim is rejected, based upon the law as applied to these circumstances.

In *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the Supreme Court formulated the basic doctrines controlling the admissibility of pre-trial identification. The *Wade-Gilbert* doctrine holds that a post-indictment lineup constitutes a crucial stage of the accusatory process, and, that the right to counsel attaches at that point. Should the right to counsel be denied or otherwise violated, the prosecution may not use any testimony concerning that pre-trial identification, and, further, a witness may not make an in-court identification of the defendant unless the prosecution establishes an "independent source", based on observation other than the illegal out-of-court identification. *United States v. Wade, supra*, 388 U.S. at 240, 87 S.Ct. 1926. However, the *Wade-Gilbert* right-to-counsel rule, and the per se exclusion mandated by its violation, applies only after the commencement of "adversary judicial proceedings." *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The Court has interpreted this to mean that there is no constitutional right to counsel at an identification which occurs prior to the commencement of prosecution by formal charge, such as arraignment, indictment, or information. *Kirby, supra*.

■ Thus, there is no "per se" exclusion of out-of-court identification made in the absence of counsel, unless criminal proceed-ings have been formally initiated. This does not mean that a defendant who was the subject of an out-of-court identification is totally without recourse to object; due process applies to all stages of a criminal proceeding, and, a defendant whose pre-trial identification was not within the borders of the *Wade-Gilbert* doctrine may still argue that the challenged identification was "so unnecessarily suggestive and conducive to irreparable mistaken identity that he was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). Under *Stovall*, the test as to whether due process has been violated depends upon the totality of the circumstances which surrounded the identification. Should a violation of due process be found, the *Wade-Gilbert* exclusionary scheme is adopted; the out-of-court identification is inadmissible, and in-court identification will not be admitted absent a showing of an "independent source", in line with the *Wade-Gilbert* philosophy. The highest court of the State of New York has held this to be the procedure in state court trials where the out-of-court identification is alleged to violate due process even if it does not violate the right to counsel. *People v. Ballott*, 20 N.Y.2d 600, 286 N.Y.S.2d 1, 233 N.E.2d 103 (1967).

*Stovall*, like the present case, dealt with a show-up. The Court did not find a denial of due process, since the totality of the circumstances were not conducive to a very substantial likelihood of irreparable misidentification, *Stovall, supra*, at 302, 87 S.Ct. at 1972. *Stovall* controls in the present case; *Wade-Gilbert* is not the proper starting point because the right to counsel had not attached when petitioner was identified by Anderson. Mere arrest does not rise to the level of an "adversary judicial proceeding" required by *Kirby*, in order for the constitutional right to counsel to attach. *See, Kirby, supra*, 406 U.S. at 688, 92 S.Ct. 1877.

■ I do not find that the on-the-scene identification of petitioner violated his constitutional right to due process. Since the crime had occurred approximately one hour

before the confrontation, and since Anderson had had ample opportunity to observe petitioner during the course of the crime, the identification is surely not lacking a logical and rational basis, nor was it inherently unfair.

In *United States ex rel. Cummings v. Zelker*, 455 F.2d 714 (2d Cir. 1972), a show-up identification was upheld because of various factors which the court noted. The crime, a burglary, had been committed in broad daylight. The prosecution witness testified that she had gotten a good look at the defendant's face. The show-up had taken place one hour after the crime. Furthermore, the trustworthiness of the witness's initial identification was bolstered by her perception of an alteration in the defendant's clothes. Finally, despite intensive cross-examination at the *Wade* hearing, the witness steadfastly maintained that she was able to identify the defendant from her observation of him during the crime.

The facts and the analysis of *Zelker, supra,* are rather appropriate and relevant in this case. The time factor, the opportunity of the witness to observe petitioner before the show-up, and the consistent testimony by the witness that he could identify the man who robbed him as the man he identified at the show-up (and at trial), militate against mistake. The stolen items and the knife, also identified by the witness, add more strength to his on-the-scene identification and subsequent identification testimony.[1]

Having determined that the right to counsel was not at issue and that due process was not offended by the testimony flowing from the identification, there is one more matter to dispose of, and that matter goes to the very heart of the *Wade-Gilbert* and *Stovall* decisions. These decisions reflect the Court's policy view that pre-trial identifications pose a grave threat to a fair trial, since there is much room for police suggestions and implantation of the notion that a particular person in a lineup is guilty, or, that in a show-up, the sole suspect is guilty. The right to counsel at identifications made after the formal commencement of the accusatory process acts as a protection against police suggestiveness and unfairness at such a procedure, and the due process test protects a suspect against an overly suggestive or otherwise unfair confrontation before the right to counsel has attached.

In the present case, I do not find that due process has been violated by any suggestions or inherent unfairness. The conclusion that there was no suggestion or inherent unfairness is buttressed by the fact that the petitioner was not brought anywhere, but was identified right where he was found. Had Anderson been unable to identify him, this failure would have been a major defense to any subsequent criminal charges. *See, Stovall v. Denno, supra,* 388 U.S. at 302, 87 S.Ct. 1967. In addition, since the reported suspect was a black male clad in denim, it could hardly be called "suggestive" to arrange an on-the-scene show-up between the victim of the crime and a person who fit the description of the robber and was found in the appropriate vicinity.

■ Whether the due process test is couched in the language of fairness and freedom from suggestions, as expressed in *Stovall*, or whether it is examined in terms of the trustworthiness of the identification and the testimony flowing from it, as in *United States ex rel. Cummings v. Zelker, supra,* this show-up is constitutionally sound. A balance must be struck between the rights of the accused and society's right to effective law enforcement. It is now settled that prompt on-the-scene confrontation is consistent with good police work. *United States v. Sanchez,* 422 F.2d 1198, 1200 (2d Cir. 1970). The Supreme Court decisions set down rules to insure that such confrontations remain truly good police work, and insure that a defendant's right to a fair trial will not be prejudiced by an unfair identification. The identification challenged herein was not unfair, and it did not occur at a point in the criminal process

---

1. Compare *United States ex rel. Hines v. LaVallee,* 521 F.2d 1109, 1111–1112 (2d Cir. 1975).

where petitioner had a constitutional right to counsel. Accordingly, no relief is granted.

### CONCLUSIONS

The application for writ of habeas corpus is in all respects denied. No certificate of probable cause shall issue, since there are no substantive questions upon which the Court of Appeals shall rule. Permission to proceed *in forma pauperis* is denied.

It is So Ordered.