Edward GRIMES, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 77 CIV. 4181.

United States District Court,
S. D. New York.

Dec. 16, 1977.

Edward Grimes, pro se.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for United States of America; David W. Denton, Asst. U. S. Atty., New York City, of counsel.

EDWARD WEINFELD, District Judge.

The petitioner was convicted in November 1976 after a jury trial of robbing the same bank on two separate occasions. In addition to eyewitness identification, proof was offered that the defendant had participated in a third bank robbery as evidence of similar modus operandi. Petitioner appealed from the judgment of conviction. Counsel, other than trial counsel, filed an *Anders* brief,[1] asking to be relieved as counsel on the ground that the appeal record presented no nonfrivolous issues. The procedural requirements of *Anders* were complied with and petitioner's appeal was dismissed by the Court of Appeals on March 20, 1977. Subsequently he moved for a reduction of sentence, which was denied.

The petitioner now moves to vacate his judgment of conviction pursuant to 28 U.S.C., section 2255, upon the grounds that the jury was improperly permitted to convict him of both bank robbery[2] and armed bank robbery[3] and that he was denied the effective assistance of counsel. The government seeks dismissal of the petition upon the ground that petitioner is using his present motion under section 2255 as a substitute for appeal. However, this Court's search of the Court of Appeals file indicates that petitioner's present claims, whatever their merit, were not considered or referred to. Accordingly, the Court deems petitioner's claims as properly presented for adjudication.

1.  *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1966).

2.  18 U.S.C. § 2113(a).

3.  18 U.S.C. § 2113(d).

As to his first claim, it is clear that in this Circuit under the bank robbery statute the jury may consider and convict a defendant of simultaneous offenses charged thereunder provided that a single rather than concurrent or consecutive sentence is imposed.[4] Accordingly, at the time of sentence the Court specifically noted that a single sentence was to be imposed and sentenced defendant on each armed bank robbery count, but did not impose sentence on the included section 2113(a) counts. The judgment of conviction so specifies, and thus is in accord with the prevailing case law in this Circuit.

Petitioner next contends that he was denied the effective assistance of counsel because at trial counsel failed to subpoena and call two witnesses who allegedly would establish an alibi defense. As already noted, Grimes was charged with and convicted of robbing at gunpoint the same branch of the Chemical Bank on May 13 and July 2, 1976. The two robberies were remarkably similar in format and execution. Originally Grimes was indicted with codefendant Alton Fields, who, after his motion to suppress evidence was denied, pled guilty to two counts of the indictment. Thereafter a superseding indictment was returned naming petitioner Grimes as the sole defendant.

The evidence at trial against him was direct and substantial. Two eyewitnesses, employees of the bank, identified him in a photospread and also in open court. Proof was also offered of a similar act, a third bank robbery in Queens in August 1975, which was effected in a nearly identical manner as the two charged in the indictment. Grimes was linked to the Queens robbery by bank surveillance pictures and a pair of unusual pants given to the FBI by Grimes' girlfriend.

Grimes did not testify on his own behalf. His defense, as presented by Joseph I. Stone, was a case of mistaken identity. Stone conducted a vigorous and effective cross-examination of the eyewitnesses, challenging their ability to view the defendant and stressing inconsistencies between their trial testimony and the descriptions they had previously given to FBI agents. He also sought to cast doubt on the positive identification of Grimes as the perpetrator of the identical type of robbery in Queens. Considering the strength of the government's proof, the vigorous cross-examination by defense counsel was as effective as could be expected and left nothing to be desired.

However, petitioner now asserts that two alibi witnesses, Millie Gullett and Johnnie Haynes, were available and should have been called by his counsel. At trial, several discussions took place between the Court and Mr. Stone concerning the subpoenaing of Gullett. Stone had referred to her in his opening to the jury, stating that she would testify that Grimes was with her at a hospital at the time of the crime.[5] On the second of the trial, upon Stone's request, a forthwith subpoena was issued for Gullett. Stone informed the Court that she had originally told him that she would appear and voluntarily testify but subsequently decided not to do so.[6] Later in the morning, Stone stated that he had sent out the subpoena; he added, "I think if she is not back by 2 o'clock I would have been given fair opportunity."[7] The Court delayed the trial for a sufficient time to permit the witness to appear, observing, "I am convinced she does not want to testify."[8] The witness did not appear and the defense rested. Johnnie Haynes allegedly was present at the trial

4. *United States v. Mariani*, 539 F.2d 915, 917 (2d Cir. 1976); *United States v. Stewart*, 513 F.2d 957, 960–61 (2d Cir. 1975); *United States v. Pravato*, 505 F.2d 703 (2d Cir. 1974); *Gorman v. United States*, 456 F.2d 1258 (2d Cir. 1972). The cases cited by petitioner reflect a rule of other circuits and are here inapplicable. *See Wright v. United States*, 519 F.2d 13 (7th Cir.), *cert. denied*, 423 U.S. 932, 96 S.Ct. 285, 46 L.Ed.2d 262 (1975); *O'Clair v. United States*,

470 F.2d 1199 (1st Cir. 1972), *cert. denied*, 412 U.S. 921, 93 S.Ct. 2741, 37 L.Ed.2d 148 (1973).

5. T.R. at 17.

6. T.R. at 80.

7. T.R. at 156.

8. T.R. at 157.

but he was not called as a witness. Grimes claims that these witnesses should have been called, that Stone never sought Gullett and never issued the subpoena, and that their testimony would have been exculpatory. Thus, he asserts, the failure to call Gullett and Haynes constituted a violation of his Sixth Amendment right to adequate representation by counsel.

■ Petitioner's contentions must be dismissed, without a hearing, due to the insufficiency of the papers submitted to the Court and the standard by which counsel's acts must be measured in this Circuit. To raise a colorable claim petitioner must at least establish that the potential alibi witnesses could have contributed something to his defense—otherwise there can be no error in failing to call them to testify. Petitioner has not shown that he can establish this fundamental requirement. As to Millie Gullett, petitioner offers this Court no affidavit or statement detailing what Gullett would have testified. He resorts to vague assertions that her testimony would have been exculpatory. Perhaps petitioner seeks to rely upon Stone's opening remarks at trial that Gullett would testify that Grimes had been with her at a hospital. But this statement is undercut by a letter that Stone wrote to Grimes in August 1977 and which Grimes submitted in support of his petition. There, Stone states that Gullett was not called after the government investigated her story and found it to be false. Without passing upon factual issues inherent in this statement, the Court finds that petitioner has failed to establish that Gullett had anything useful to contribute in support of his defense.

Gullett's own statement likewise fails to submit any evidentiary material as to the nature of the testimony she would have given had she been called. Her statement (which is neither sworn nor notarized) merely sets forth:

> To Whom it may concern,
>
> The lawyer didn't see or hear from me on November 11, 1976 [the second day of the trial] or any date then or after.
>
> Thank you
>
> [signed] Millie Gullett

Grimes did submit an affidavit from Haynes; in fact, he submitted two and they vary in crucial detail. The first, dated July 21, 1977, reads:

> I was in the apartment approxly [sic] 7:30 am and again at 9:30 am and each time he [Grimes] were asleep on the couch. *I returned for the third time, around noon and at that time he was not there*! (Emphasis supplied.)

The second affidavit, signed on November 20, 1977 (after the government's answer was filed) reads:

> On July 2d 1976, Eddie was asleep on his mother's sofa approximately 7:30 AM-9:30 Am *and around noon*, this was the tentent[?] of my testimony! His attorney (Mr. Stone) never discussed anything with me! (Emphasis supplied.)

The evidence at trial indicated that the July 2 robbery occurred between 11:30 and noon. These contradictory statements give support to Stone's reference in his letter to Grimes that Haynes was not called to testify because he could not present a coherent story.

The affidavits and assertions are further insufficient because it is not clear to which of the robberies they refer. Haynes' testimony apparently would have served as an alibi for the July 2 robbery, but it is nowhere stated for which robbery Gullett would have presented an alibi. Stone's opening statement at trial asserted that Gullett would testify as to the May 13, 1976 robbery; however, his letter to Grimes, submitted by the petitioner to this Court, states that Haynes' and Gullett's alibis were contradictory.

■ Moreover, and entirely independent of the insufficiency of the affidavits, even assuming Stone failed to call the witnesses for reasons other than those stated to Grimes in the letter to him, counsel's conduct does not rise to a constitutional violation under the standard prevailing in this Circuit. As is well established—and has been repeatedly reaffirmed—

"in order to be of constitutional dimensions the representation [must] be so 'woefully inadequate "as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." ' *United States v. Currier*, 405 F.2d 1039, 1043 (2d Cir.), cert. denied, 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228 . . (1969), quoting *United States v. Wight*, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 . . . (1950) . . . ." *United States v. Yanishefsky*, 500 F.2d 1327, 1333 (2d Cir. 1974).[9]

Decisions concerning the calling of witnesses and the proper investigation of defenses have traditionally been categorized as "trial tactics" not subject to review by way of collateral attack.[10] In a closely analogous case, the First Circuit has stated:

> The alleged failure of [defendant's] trial counsel to call [defendant's wife] as a witness was a question of trial tactics. As a general rule, postconviction quarrels as to such tactics cannot be found to constitute an unconstitutional deprivation of effective assistance of counsel. "Errors, even egregious ones, in this respect do not provide a basis for postconviction relief." *United States v. Rubin*, 433 F.2d 442, 445 (5th Cir. 1970), cert. denied, 401 U.S. 945, 91 S.Ct. 961, 28 L.Ed.2d 228 . . . (1971); *accord, United States v. Hester*, 489 F.2d 48, 50 (8th Cir. 1973) (per curiam). To be sure, there have been exceptional cases. *See, e. g., Fortner v. Balkcom*, 380 F.2d 816 (5th Cir. 1967) (attorney allegedly failed to call a witness who would have testified, supported by other uncalled witnesses, that she committed the murder). But the instant case is in no way exceptional. [Defendant's] trial counsel may well have concluded that his wife's purported alibi would seem so incredible to the jury, in view of the extensive government evidence to the contrary, that her testimony could only hurt [defendant's] cause. We will not second-guess the matter at this point.[11]

Moreover, it is significant that Stone had been informed by the prosecution that after the codefendant Fields had pled guilty, the government had made an arrangement with Fields to testify truthfully as to the facts relating to the robbery and thus Fields was prepared to challenge any alibi defense proffered on behalf of Grimes. This is supported by the record entered upon the entry of Fields' plea of guilty.[12] Furthermore, the Court presided over Grimes' trial and is aware that Stone displayed unusual talent on behalf of petitioner in a difficult position. That Stone undertook a vigorous and capable defense is fully borne out by the transcript of the trial as well as the Court's independent recollection. Thus, there is not the slightest basis for any claim that Grimes' trial was a farce or mockery of justice.

The petition is dismissed.

---

**9.** *LiPuma v. Commissioner, Dept. of Corrections*, 560 F.2d 84 at 90 (2d Cir. 1977).

**10.** *See United States v. Gonzalez*, 321 F.2d 638, 639 (2d Cir. 1963).

**11.** *Moran v. Hogan*, 494 F.2d 1220, 1223 (1st Cir. 1974).

**12.** Suppression hearing minutes at 224–25, *United States v. Fields*, Crim. No. 76–940 (S.D. N.Y. Oct. 20, 1976).