Donald F. ORR, Petitioner,

v.

Peter SCHAEFFER, Warden, Bronx House of Detention and Harold J. Smith, Superintendent, Attica Correctional Facility, Respondents.

No. 78 Civ. 1457.

United States District Court, S. D. New York.

Oct. 23, 1978.

Donald F. Orr, pro se.

Louis J. Lefkowitz, Atty. Gen. of State of N. Y., New York City, for Respondents; Barry R. Fertel, Deputy Asst. Atty. Gen., New York City, of counsel.

## OPINION

### EDWARD WEINFELD, District Judge.

Petitioner, Donald Orr, is currently incarcerated in the Bronx House of Detention, serving consecutive sentences of ten to twenty and three and one-half to seven years, pursuant to his conviction on four counts of robbery and criminal possession of a weapon, after a jury trial in the New York County Supreme Court. Having appealed the conviction in the state court system without success,[1] he now seeks release through a federal writ of habeas corpus.[2] Petitioner urges this Court to vacate his conviction on the grounds that he was denied a constitutionally fair trial due to prosecutorial misconduct and ineffective assistance of counsel.

Orr was convicted of three separate robberies of New York clothing stores (occurring on October 30, December 6, and December 9, 1974). The main evidence against Orr was the identification of him as the robber by six employees of the victimized stores—one witness to the October 30 robbery, two witnesses to the December 6 robbery, and three witnesses to the December 9 robbery. In mid-January 1975, each of the six eyewitnesses' picked Orr's picture out of an array of between six and nine photographs and identified him as the robber. Five of the six employees separately picked Orr out of a seven-person lineup conducted at the District Attorney's office on January 22, 1975. At trial each witness described the robbery she had seen and made a firm identification of Orr as the man who committed the crime. Testimony on both direct and cross-examination indicated to the jury that the witnesses had made prior identifications based on photographic arrays and the lineup.

Orr was represented at trial by a court-appointed attorney, Michael Bennett. The defense strategy was consistent throughout: to suppress or undermine the identifications because of alleged suggestiveness of the State's lineup and photographic array procedures. A *Wade* hearing was held on April 25, 1975, to investigate defendant's motion for suppression of the evidence, but the motion was denied. At trial, the defense called no witnesses of its own but, instead, subjected the six employees to searching cross-examination seeking to impugn their identifications. Bennett's questions suggested that the witnesses' assurance that Orr was the robber might have been triggered by the police officers who conducted the identification procedures and by mutual reinforcement when five of the witnesses were together before the lineup.[3] In summation, Orr's attorney epitomized his argument:

> There is no positive evidence linking the defendant, Donald Orr, to these three holdups. As I said in the voir dire, the third element in this case is time, the passage of time. Do these women believe that Donald Orr is the man because of the passage of time and suggestability [sic] of the officers? Could a mistake have been made in this case?[4]

---

1. The judgment of conviction was modified to dismiss the count of criminal possession of a weapon, because it overlapped with the count of robbery in the first degree. As modified, the conviction was affirmed. *People v. Orr,* 59 A.D.2d 600, 398 N.Y.S.2d 152 (1977). Leave to appeal to the New York Court of Appeals was denied on November 16, 1977.

2. 28 U.S.C. § 2254(a).

3. Trial Record (T.R.) at 47–48, 83–85.

4. *Id.* at 198–99.

The prosecutor sought to rebut this defense strategy in two ways. First, he called the three police officers, who recounted the exact procedures by which the photographs were shown to the witnesses and the lineup was conducted. Second, in his summation to the jury, the prosecutor stressed the cumulative cogency of the direct evidence against the defendant:

> Think about that, on six occasions these detectives went out and separately interviewed these witnesses and each one picked out the defendant from a photo lineup. And then at the lineup themselves [sic] each of them picked . . . the defendant out. No amount of description swapping could ever produce that. The odds are astronomical that six people, separate people viewing photographs separately would each pick the defendant out.
>
> I am not an analyst but I bet you odds it is astronomical that that would happen, that not one of them would pick somebody else out. Why did they pick him out? It's because they had ample opportunity to form a mental image in their minds of the defendant. So don't get trapped by Mr. Bennett's description swapping, it's just to confuse you.[5]

■ Petitioner Orr now alleges that his trial was defective in three ways: (1) the prosecutor's summation, quoted above, undermined his right to be acquitted unless the evidence convinced the jury of his guilt "beyond a reasonable doubt"; (2) the officers' testimony was illegal hearsay and "bolstered" the witnesses' testimony concerning pretrial identification; and (3) defense counsel failed to investigate and present petitioner's alibi defense and was thereby constitutionally ineffective in his assistance. All three claims have been properly presented to the state courts and are therefore exhausted for purposes of federal habeas review.[6] After a line-by-line review of the more than 300 pages of state trial proceedings, the state appellate briefs, and other submissions, the Court finds beyond a reasonable doubt that the alleged errors did not deprive petitioner of the fundamentally fair trial guaranteed to him under the Due Process Clause of the Fourteenth Amendment.[7]

I

■ The first two objections made by petitioner—evidentiary bolstering and improper remarks during summation—relate to the prosecutor's conduct of the State's case. It is, of course, well established that a writ of habeas corpus is not available to review state court evidentiary errors or improper prosecutorial statements unless the errors, either singly or together, were so fundamentally unfair as to deny the defendant a fair trial.[8] In the context of the

---

**5.** *Id.* at 209–10.

**6.** The State asserts that the constitutional basis of petitioner's claim of improper prosecutorial remarks was not exhausted in the state courts and therefore not cognizable on habeas review. *See Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 423 (1971); *Wilson v. Fogg*, 571 F.2d 91 (2d Cir. 1978). Yet in objecting that the remarks had the effect of reducing the State's "burden to a lesser standard of proof than beyond a reasonable doubt" and casting upon petitioner "the affirmative burden of contravening odds and probability." Brief of Defendant-Appellant Orr, at 9, *People v. Orr*, 59 A.D.2d 600, 398 N.Y.S.2d 152 (1977), the petitioner gave fair warning of his constitutional claim. *Cf. In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) ("[W]e explicitly hold that the Due Process Clause

protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.")

**7.** *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Ong*, 541 F.2d 331 (2d Cir. 1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977); *United States ex rel. Satz v. Mancusi*, 414 F.2d 90 (2d Cir. 1969); *Volpicelli v. Salamack*, 447 F.Supp. 652 (S.D.N.Y.1978).

**8.** *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (prosecutor's comments); *United States v. Hyatt*, 565 F.2d 229 (2d Cir. 1977); *Malley v. Manson*, 547 F.2d 25 (2d Cir. 1976), *cert. denied*, 430 U.S. 918, 97

entire trial, the errors alleged in this case did not prejudice petitioner's due process rights.

First, and most importantly, the State developed, apart from the asserted errors, a most compelling case against the petitioner. From each of the eyewitnesses, the prosecutor elicited a detailed description of the crime. In each instance, the witness testified that the store was well lit and uncrowded, that the witness carefully observed the robber for a period of ten to twenty minutes (three of the witnesses had a close look at his face), and that the petitioner was, without doubt, the robber.[9] On cross-examination, the witnesses were steadfast in their assurance that the petitioner committed the robberies they saw.

In contrast to this firm and substantial evidence of guilt, any alleged prejudice arising from the claimed errors was minimal. For example, the testimony of the three police officers was limited to a description of the procedures for the photographic array and the lineup. As to petitioner's assertion that such evidence of prior identification is improper "bolstering," this Circuit has never regarded the practice as inimical to trial fairness.[10] Indeed, nothing has been submitted to suggest that such alleged bolstering materially increased the impact

of the detailed testimony already rendered by the six employees.

Similarly, the totality of the circumstances indicates that the prosecutor's remarks in summation were not prejudicial. In fact, the statements, like the officers' testimony, were a rejoinder to defense counsel's argument that the witnesses' identifications were suggested by the circumstances of the photographic spread and lineup situations. Courts have consistently upheld "[t]he right of the prosecution to rebut an argument raised by the defense, even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts."[11] Moreover, petitioner exaggerates the ambit of the prosecutor's statement: it did not imply that high evidentiary probability was sufficient to establish criminal guilt, but merely argued the unlikelihood that defense counsel's conjectures were valid explanations of the evidence.[12]

Even if the Court were to accept petitioner's claim that the prosecutor's conduct was improper, any error would be of little constitutional moment and harmless beyond a reasonable doubt. This conclusion is buttressed by the fact that neither defense counsel nor the state court found the prosecutor's conduct offensive enough to enter any kind of objection.[13]

S.Ct. 1335, 51 L.Ed.2d 598 (1977); *United States ex rel. Castillo v. Fay,* 350 F.2d 400 (2d Cir. 1965), *cert. denied sub nom. Castillo v. Fay,* 382 U.S. 1019, 86 S.Ct. 637, 15 L.Ed.2d 533 (1966); *Volpicelli v. Salamack,* 447 F.Supp. 652 (S.D.N.Y.1978); *United States ex rel. Craft v. Lefevre,* 432 F.Supp. 93 (S.D.N.Y.1977); *see United States ex rel. Santiago v. Follette,* 298 F.Supp. 973, 974 (S.D.N.Y.1969) ("[T]he writ of habeas corpus is not available to review errors in a state trial in the admission of evidence, alleged prejudicial statements in the Court's charge or in the prosecutor's summation absent a showing that they deprived defendant of a fundamentally fair trial." [footnotes omitted]).

**9.** Typical is the testimony of Karen Coniglio with respect to the December 9 robbery. For eight to ten minutes after Orr entered the store the witness had him under close surveillance, T.R. at 97, and also saw his face during part of the holdup, *id.* at 98. In the twenty minutes that petitioner was in the store, the witness had her eye on him for fifteen; the store was well lighted, *id.* Ms. Coniglio identified the petition-

er as the robber and gave a detailed description of his appearance on that date, *id.* at 97.

**10.** *United States v. De Sena,* 490 F.2d 692, 695 (2d Cir. 1973); *United States v. Sacasas,* 381 F.2d 451, 454 (2d Cir. 1967); *United States v. Forzano,* 190 F.2d 687, 689 (2d Cir. 1951).

**11.** *United States ex rel. Craft v. Lefevre,* 432 F.Supp. 93, 96 (S.D.N.Y.1977); *see United States v. LaSorsa,* 480 F.2d 522 (2d Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973); *United States ex rel. Leak v. Follette,* 418 F.2d 1266 (2d Cir. 1969).

**12.** T.R. at 208–10.

**13.** *Malley v. Manson,* 547 F.2d 25, 29 (2d Cir. 1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1335, 51 L.Ed.2d 598 (1977); *Volpicelli v. Salamack,* 447 F.Supp. 652, 666–67 (S.D.N.Y.1978); *United States ex rel. Fernanders v. Fay,* 241 F.Supp. 51, 56 (S.D.N.Y.1965), *aff'd sub nom. United States ex rel. Fernanders v. Wallack,* 359 F.2d 767 (2d Cir. 1966) (per curiam).

## II

Petitioner's final contention is that he was denied his right to meaningful legal representation because his court-appointed counsel failed to press or investigate an alibi defense. Though his assertions have not been entirely consistent, Orr essentially claims that a co-worker would have provided him an alibi for the December 9 robbery and that his attorney failed to investigate his claim and to interview witnesses who would so testify.[14] Bennett denies that petitioner ever gave him "any specifics as to the nature of the alibi and the character of the alibi witnesses."[15]

Even if petitioner's allegation were true, it would not be grounds for vacating the state conviction. Bennett, in a colloquy with the state court, explained that as matter of trial tactics he rejected the desirability of the alibi defense: "To present an alibi witness as to one of the robberies—no matter how good a witness—would only bring out and emphasize the weakness of the defense as to the other two robberies"[16] and would cause the jury to wonder "why doesn't the defendant take the stand?"[17] Since the alibi would only have applied to one of the three robberies with which petitioner was charged, defense counsel's strategy seems entirely reasonable. Courts have consistently refused to find ineffective assistance of counsel on the basis of the attorneys' trial decisions, such as the calling of witnesses and investigation of possible defenses, when the decisions are reasonably based on valid tactical considerations.[18] The rationale behind this policy is that the "exercise of a defense attorney's professional judgment should not be second-guessed by hindsight."[19] The policy is especially compelling in the instant case, where the petitioner brought the matter of the alibi witness to the attention of the state court, which found no cause to inter-

---

The issue, raised by the State, of whether petitioner's failure to object at trial to the prosecutor's remarks and bolstering of witnesses' testimony now bars habeas relief as a waiver, need not be decided. *Compare Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 52 L.Ed.2d 594 (1977) (defendant barred from habeas review of conviction with illegal confession when defendant failed to object at trial) *and United States ex rel. Craft v. Lefevre,* 432 F.Supp. 93, 96 (S.D.N.Y.1977) (failure to object to prosecutorial summation may bar habeas relief under *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)) *with United States ex rel. Schaedel v. Follette,* 447 F.2d 1297 (2d Cir. 1971) (under New York law failure to object to deprivation of constitutional rights need not be raised at trial level to be preserved for appeal) *and Ketchum v. Ward,* 422 F.Supp. 934 (W.D. N.Y.1976), *aff'd mem.,* 556 F.2d 557 (2d Cir. 1977) (allegations that prosecutorial misconduct denied defendant fair trial need not be raised at trial).

14. Petitioner now asserts that he had possible alibis for all three robberies. Affidavit of Donald F. Orr, Petitioner (May 2, 1978). This is inconsistent with his earlier claims that the alibi was limited to one occasion, the robbery of December 9. *See* T.R. at 184; Brief of Defendant-Appellant Orr, at 10–13, *People v. Orr,* 59 A.D.2d 600, 398 N.Y.S.2d 152 (1977) ("By presenting such an alibi witness, the defendant would have been able to convince the jury as to the December 9th incident.")

15. Petitioner's Appendix "B" (letter of Michael Bennett).

16. *Id.*

17. T.R. at 186–87.

18. This has been the position of courts applying the "reasonable effective assistance" test (or a variant thereof) for determining ineffective assistance of counsel, *see Greenfield v. Gunn,* 556 F.2d 935 (9th Cir.), *cert. denied,* 434 U.S. 928, 98 S.Ct. 413, 54 L.Ed.2d 288 (1977); *United States v. Rubin,* 433 F.2d 442, 445 (5th Cir. 1970), *cert. denied,* 401 U.S. 945, 91 S.Ct. 961, 28 L.Ed.2d 228 (1971); *cf. United States ex rel. Johnson v. Vincent,* 370 F.Supp. 379, 385–87 (S.D.N.Y.1974) (dictum), as well as courts finding constitutionally ineffective assistance only upon a showing that the representation shocks the conscience of the court and makes the proceedings a farce and mockery of justice, *see United States v. Hager,* 505 F.2d 737, 739 (8th Cir. 1974); *Moran v. Hogan,* 494 F.2d 1220, 1223 (1st Cir. 1974); *United States v. Garguilo,* 324 F.2d 795, 796 (2d Cir. 1963). Courts have thus refused to find ineffective assistance of counsel when defendant's attorney failed to call potential alibi witnesses. *See, e. g., Grimes v. United States,* 444 F.Supp. 78 (S.D.N.Y.1977), *aff'd in relevant part,* 582 F.2d 1271 (2d Cir. 1978).

19. *Robinson v. United States,* 448 F.2d 1255, 1256 (8th Cir. 1971); *see Moran v. Hogan,* 494 F.2d 1220, 1223 (1st Cir. 1974).

fere with counsel's strategy.[20] This Court would be loathe to "second-guess" *both* the state court *and* defense counsel and declare the tactical decision prejudicial to petitioner's right to a fair trial.

Indeed, the Court's independent line-by-line review of the record indicates that Bennett was diligent and competent in his defense. He participated energetically and intelligently in the pretrial suppression hearing. Aware that petitioner's prior record suggested that he would not testify, defense counsel engaged in extensive cross-examination of the prosecution's witnesses in an effort to impugn the State's prima facie case.[21] That Bennett's defense strategy was unavailing is perhaps due more to the strong evidence implicating petitioner than to inappropriate tactics. At the time of sentencing, Bennett made an eloquent plea for leniency; to ameliorate petitioner's often stormy and unpredictable behavior toward both the Court and himself, Bennett testified that he "found the defendant by and large cooperative in many ways and to be a rather decent person many times."[22]

Upon the record, Donald Orr received competent and vigorous representation by counsel, as well as a fundamentally fair trial. Because the claim for habeas relief is conclusively refuted as to the alleged facts by the files and records of the case, the petition is denied without a hearing.[23]

---

**20.** T.R. at 183–89.

**21.** For example, in cross-examining Julia Holmes, a witness to the December 6 robbery, defense counsel effectively elicited information that might have supported a reasonable belief that the witnesses' "information swapping" unduly reinforced their impressions so as to produce the misleading positive identifications. *Id.* at 85–86.

**22.** Record of Sentence, at 11, *People v. Orr,* Indictment Nos. 554–75, 775–75, 784–75 (Oct. 15, 1975).

**23.** 28 U.S.C. § 2254(d); *see United States v. Romano,* 516 F.2d 768, 771 (2d Cir.), *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975); *Moran v. Hogan,* 494 F.2d 1220 (1st Cir. 1974).