Theodore Roosevelt THOMPSON, Petitioner-Appellant,

v.

Max LINN, Warden, Jefferson County Jail, Bessemer Division and William J. Baxley, Attorney General, State of Alabama, Respondents-Appellees.

No. 78–2076

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 8, 1978.

U. W. Clemon, Demetrius C. Newton, Henry L. Thompson, Birmingham, Ala., for petitioner-appellant.

Wm. J. Baxley, Atty. Gen., Jack M. Curtis, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

PER CURIAM:

Petitioner Theodore Thompson brings this appeal from the District Court's denial of his petition for writ of habeas corpus. In his petition, Thompson challenges his state

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

court robbery conviction[1] on grounds that an illegally obtained confession was used against him in violation of his Sixth Amendment right to counsel and his Fifth Amendment right against self-incrimination.[2] Accepting the recommendation of the States Magistrate,[3] the District Court denied the petition without conducting an evidentiary hearing. Subsequently, the District Court issued its certificate of probable cause, whereupon this appeal followed. On appeal, Thompson challenges the District Court's findings of fact and the application of the relevant constitutional standards to those facts. We affirm the District Court's denial of the petition.

## I. Facts

On the morning of October 7, 1974, a service station in Fairfield, Alabama was robbed and its manager killed. Subsequently, Thompson was arrested in Nyack, New York. Thompson waived extradition and was returned to Alabama by Detective W. R. Stricklin and Officer Rubin Wilkinson of the Fairfield police department.

While in New York, Thompson was given *Miranda* warnings. According to testimony of Stricklin and Wilkinson, no attempts were made to interrogate Thompson on the trip back to Alabama. Record at 56, 58. On the morning of October 29, the day of the arrival in Fairfield, Thompson was visited by one of his lawyers and his brother. He was told to talk to no one, and instructions were left with the police to call Thompson's lawyers before conducting any interrogations. Stricklin did attempt to interview Thompson that afternoon, but upon being told by Thompson that he had been instructed to remain silent, Stricklin testified that he terminated the interview with the remark that Thompson should do as his lawyer had instructed. *Id.* at 59.

On the afternoon of October 29, Stricklin notified Thompson's lawyers that a line-up was to be conducted at 1:00 p. m. the next day, October 30. However, at about 9:30 the morning of October 30, Stricklin notified Thompson's lawyers that the line-up was cancelled.[4] He then informed Thompson of the cancellation and told him that he was to be transferred to the county jail facility. Stricklin testified that no other conversation was had with the prisoner that morning. *Id.* at 67–68.

Later that afternoon, in preparation for the transfer to the county jail, Thompson was photographed and fingerprinted by Wilkinson, who testified that he did not question Thompson and that Thompson made no remarks to him. *Id.* at 56. Wilkinson further testified that upon completion of the fingerprinting and photographing, Thompson told him that he wanted to speak to Stricklin. *Id.* at 57. Stricklin was then summoned, and Wilkinson left him alone with Thompson. *Id.*

Stricklin testified that Thompson told him that "he wasn't going to take the murder rap for Michael [Michael Blanche, another suspect in the case], 'I'll tell you what was—how it was.'" *Id.* at 59. According to Stricklin, he said nothing to Thompson prior to that statement, but afterwards told him "[Y]ou don't have to tell me anything . . . ." *Id.* at 60. Thompson was said to have replied, "I want to tell you about it." *Id.*

Stricklin then accompanied Thompson to the office of Detective-Sergeant Albert E. Sanders. Sanders testified that prior to beginning the interview he twice advised

---

1. Thompson's conviction was affirmed by the Alabama Court of Criminal Appeals, Ala.Cr. App., 1977, 347 So.2d 1371, *cert. denied,* Ala., 1977, 347 So.2d 1377, *cert. denied,* 1978, 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765.

2. Thompson maintains that his Fifth Amendment rights were violated in that he was pressured into confessing during allegedly numerous interrogations. His Sixth Amendment claim stems from the fact that he was interro-

gated by law enforcement officials without the presence of his attorney.

3. 28 U.S.C.A. § 636(b) sets forth the powers of the United States Magistrate in habeas corpus proceedings.

4. The reasons for the cancellation are unclear. According to Stricklin, the line-up was cancelled after a witness identified Thompson from some photographs. Record at 65.

Thompson of his *Miranda* rights and that Thompson had affirmed that he understood those rights. *Id.* at 74–76. At about 1:00 p. m. Thompson made a full confession, stating that he participated in the crime but that the gunshot was fired by Michael Blanche. *Id.* at 210. The statement was handwritten by Sanders, with Thompson adding in his own handwriting at the end of the statement, "I have read these three pages of my statement and they are true an [sic] correct to the best of my knowledge. TRT." *Id.*

Thompson's testimony contradicts the officers' testimony in several respects. Thompson claimed that Stricklin and Wilkinson persistently attempted to interrogate him both during the trip from Nyack to Fairfield and while at the Fairfield jail. *Id.* at 169–172.[5] He also testified that he asked to call an attorney more than six or seven times but was never allowed to do so and that he was photographed and fingerprinted five or six times before his confession. *Id.* at 171–172. In addition, Thompson claimed that on several occasions Stricklin and Wilkinson told him that they were not so much interested in him as they were in convicting Michael Blanche. *Id.* at 173. He said that the officers told him that he would be treated leniently if he cooperated with them. *Id.*

Thompson denied that he asked to see Stricklin or that he told him that he would not take a "murder rap" for Blanche. *Id.* at 180. He did admit, however, that he

wrote the statement at the end of his confession and that the confession was not accompanied by any coercive actions on the part of Stricklin and Sanders. *Id.* at 177, 180.

## II. Issues

The issues before the Court on this appeal are whether the federal District Court could properly accept the state trial court's findings of fact[6] and whether the District Court properly applied the relevant constitutional standards to the facts as found by the state court.

### A. Finding Facts

■ *Townsend v. Sain*[7] sets forth the standards for determining when a federal habeas court *may* adopt the factual findings of a state court without conducting an evidentiary hearing. Essentially the same standards have now been codified into 28 U.S.C.A. § 2254(d) as the test for determining when a federal habeas court *must* presume correct the findings of the state court.

Under 28 U.S.C.A. § 2254(d), where there has been a hearing on the merits of a factual issue in the state court, the determination of that factual issue, if evidenced by a written finding or other "reliable and adequate written indicia," must be presumed correct unless petitioner shows, or it otherwise appears, that one of the circumstances listed in § 2254(d)(1)–(8) is present.[8]

---

**5.** Thompson testified that he was interrogated five or six times on October 30. Record at 179. As for October 29, Thompson originally testified that he was questioned nine or ten times, but he later changed his testimony and stated that he was only questioned two or three times. *Id.* at 170, 179.

**6.** In his brief, Thompson attacks the District Court's findings of fact. Actually, the District Court did not make any findings of fact. Instead, the Court, by adopting the United States Magistrate's recommendation, accepted the state court's findings of fact. Therefore, Thompson's contention is more accurately viewed as a challenge to the District Court's acceptance of the state court's factual findings.

**7.** 1962, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

**8.** 28 U.S.C.A. § 2254(d) provides in pertinent part:

    (d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

    (1) that the merits of the factual dispute were not resolved in the State court hearing;

In the case before us, the District Court correctly concluded that the threshold conditions for establishing the § 2254(d) presumption of correctness are met.

(1) The requirement of an adequate "written indicia" of the state court's findings is met in that the District Court had before it the transcript of the entire trial, including the evidentiary hearing.

(2) The requirement of a hearing on the merits is also satisfied. Prior to admitting Thompson's confession and out of the presence of the jury, the Alabama trial court heard testimony and cross-examination of Stricklin, Wilkinson, and Sanders, each of whom testified regarding the circumstances leading up to the confession. Immediately following this proceeding, the trial court observed that it would admit the confession into evidence. Under these circumstances, the habeas court may assume that the decision to admit the statement was made on the merits. *Townsend v. Sain*, 1962, 372

U.S. 293, 314, 83 S.Ct. 745, 758, 9 L.Ed.2d 770.

(3) Albeit implicitly, the necessary determination of the factual issues in dispute was also made. Although no express findings of fact were made by the trial court, the habeas court could still reconstruct the findings of the state court, "either because [the state trial judge's] view of the facts is plain from his opinion, or because of other indicia." *Id.*[9] Here, the state trial court's view of the facts is obvious. By admitting Thompson's confession into evidence, the trial court clearly demonstrated that it believed the officers' and not Thompson's version of the facts.[10] See *Dempsey v. Wainwright*, 5 Cir., 1973, 471 F.2d 604, 606 n. 3, *cert. denied*, 411 U.S. 968, 93 S.Ct. 2158, 36 L.Ed.2d 69.

Thus, it can be inferred that the trial court found the following facts: the officers respected Thompson's right to remain silent until he, Thompson, asked for an in-

---

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record . . . ..

9. Although an insufficient indicia standing alone, *Tannehill v. Fitzharris*, 9 Cir., 1971, 451 F.2d 1322, the state appellate opinion, wherein the court fully discussed the evidence and Thompson's claims, may provide some guidance in helping the habeas court determine what facts were found at the state trial. In this

case the Alabama Court of Criminal Appeals determined as follows:

Reviewing the pertinent facts in this instance we find that there was sufficient evidence for the trial court to conclude the following was true: That the appellant was advised of his *Miranda* rights at the time of his arrest; that the appellant was not questioned about the crime on the return trip from New York; that once at the Fairfield City Jail the appellant's attorney was allowed to visit him; that after the appellant informed Detective Stricklin that he had been advised by his attorney to remain silent, all questioning ceased; that the appellant voluntarily, intelligently and knowingly initiated and requested the interrogation which led to his signed confession; that this session only lasted about fifteen or twenty minutes; that the appellant was, at this time and before he confessed, given his *Miranda* rights two different times; that each time the appellant was informed of his right to have an attorney present during the time he was being questioned; that the appellant read these rights and stated that he understood them; and that the appellant freely and voluntarily and knowingly stated to the two officers who interrogated him his participation and knowledge of the crime under investigation.

347 So.2d 1371, 1376.

10. Had the trial court credited Thompson's testimony and still admitted the confession, there would have been a clear constitutional error.

terview with Stricklin; Stricklin and Sanders advised Thompson of his right to remain silent and have his lawyer with him at the interview; Thompson said that he understood his rights but wanted to tell "how it was" anyway.

Once it is established that the threshold conditions of § 2254(d) are satisfied, it then becomes necessary to determine whether there are present any of the § 2254(d)(1)–(8) factors that rebut the presumption of correctness. Thompson has not shown, and we fail to find, the presence of any of these factors. The merits of the factual dispute were resolved in the state court proceedings. § 2254(d)(1). The state court's fact finding procedure, wherein the three police officers were examined and cross-examined outside the jury's presence, provided Thompson with a full and fair hearing and an adequate opportunity to develop the material facts at issue. § 2254(d)(2), (3). The testimony of the three officers provided fair support for the state court's resolution of the factual dispute in their favor. § 2254(d)(8).

Accordingly, we conclude that the District Court properly adopted as correct the state court's findings of historical fact.

### B. Applying Law

Our discussion does not, however, end here. Having adopted the state trial court's findings of fact, the federal habeas court must nevertheless independently apply the relevant constitutional principles to the facts as found by the state court. *Mason v. Balcom*, 5 Cir., 1976, 531 F.2d 717.[11]

 The District Court made the requisite independent evaluation of Thompson's constitutional claims. The Magistrate's report shows that Thompson's Fifth and Sixth Amendment claims were fully considered and resolved pursuant to correct constitutional standards. In light of the facts as found by the state trial court and adopted by the District Court, we cannot say that the District Court's findings of voluntariness and waiver were clearly erroneous. *U.S. ex rel Young v. Wainwright*, 5 Cir., 1974, 490 F.2d 96, *cert. denied*, 419 U.S. 855, 95 S.Ct. 100, 42 L.Ed.2d 88; *Collier v. Estelle*, 5 Cir., 1975, 506 F.2d 22.

The District Court's denial of the petition for habeas corpus is correct.

AFFIRMED.

---

11. In considering constitutional questions, however, the habeas court is not obliged to hold a hearing to determine the constitutional issues, where, as here, the state proceedings afforded petitioner a full and fair hearing. *Brown v. Allen*, 1952, 344 U.S. 443, 460–65, 73 S.Ct. 397, 97 L.Ed. 469.