**Willie Fred BATY, Petitioner,**

v.

**Charles R. BALKCOM, Warden, Georgia State Prison, Respondent.**

Civ. A. No. CV479–101.

United States District Court,
S. D. Georgia,
Savannah Division.

Aug. 6, 1980.

Grace Evans, Asst. Fed. Public Defender, Augusta, Ga., for petitioner.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent.

## PETITION FOR A WRIT OF HABEAS CORPUS

BOWEN, District Judge.

### ORDER

Petitioner is a prisoner of the State of Georgia confined at the Georgia State Prison at Reidsville, Georgia. He is serving a life sentence imposed after a conviction for armed robbery in the Superior Court of Newton County on July 11, 1977. His conviction was affirmed by the Court of Appeals in *Baty v. State*, 147 Ga.App. 277, 248 S.E.2d 503 (1978), after a motion for new trial heard in March of 1978. Certiorari was denied by the Supreme Court of Georgia by Order dated November 7, 1978. The issues presented in this petition for relief under 28 U.S.C. § 2254 have thus been presented to the courts of Georgia as required by that statute. 28 U.S.C. § 2254(b), (c).

Petitioner alleges his trial was rendered unfair by the ineffective assistance of counsel in violation of his rights guaranteed by the Sixth Amendment to the Constitution. Specifically, he alleges that: (1) his trial attorney did not speak to him except briefly on the morning of his trial; (2) his counsel conducted no independent investigation of the case, relying on work done by petitioner's former counsel; (3) counsel did not discuss the existence of defense witnesses with petitioner, nor did he interview the

State's witnesses; (4) counsel failed to file a motion for continuance despite the fact that a denial of such would have been grounds for new trial; (5) counsel decided against petitioner's taking the stand in his defense without prior consultation with him; and (6) petitioner was denied a fair trial because of a conflict of interest between representation of petitioner and his co-defendant.[1]

## I.

The Georgia Court of Appeals made certain findings of fact based upon the record of both the defendant's trial and the motion for new trial.[2] These are as follows:

A robbery committed by two individuals occurred in a store in Newton County. The store owner only saw one of the individuals (later identified as defendant Baty), who knocked him down. He felt something against his head, very much like a gun, and the robber told him, "I'll blow your [g— d——] brains out." During this incident another employee came in the store, whereupon defendant Leroy Miller, whom he had seen in the store earlier that morning, waved a gun at him and "told me to get behind the counter, get on the floor," and he was made to lie down on the floor. The two robbers proceeded to ransack the store and left, advising the store owner and employee they would blow their brains out if they came out of the store. The robbery was reported with a description given to the police that they had fled on the expressway in a car with a black vinyl top and off-white bottom, being two black males, one big, the other smaller. The car was then chased by Rockdale County police in which shots were fired as soon as they were intercepted. When the chased vehicle left the expressway one of the robbers (later identified as defendant Leroy Miller) jumped from the car, aimed a pistol at the police officer, pulled the trigger and when it misfired

he fled. The police officer attempted to shoot at defendant Miller with a shotgun but it misfired. Defendant Miller was later apprehended at a nearby apartment house. The chase continued as to the driver of the car (later identified as defendant Baty) who ran it into a fence and fled. Defendant Baty, as he was fleeing, fired several shots from his pistol at a uniformed state patrolman who in turn fired six shots from his M–1 carbine which then malfunctioned. He was later apprehended. Defendants Leroy Miller and Willie Fred Baty were separately indicted for armed robbery, tried jointly and convicted. We are concerned here with only the appeal of the defendant Baty, who was sentenced to life imprisonment.

During the trial only the defendant Miller took the witness stand and testified. He admitted he had been in the store to "get me a drink," had bought a drink out of the machine on the outside of the store, started walking down the street and hitchhiked a ride with another until they were chased by a police officer on the expressway who started shooting at them. He got "scared," and jumped out of the car, climbed the fence and was stopped by the police officer. His sole defense was that he did not know defendant Baty and was only riding in the car when it was chased by a police car.

Initially, both defendants were jointly represented by one lawyer who investigated the case. Approximately three or four days before trial because of the different stories the two defendants were telling, as to the circumstances surrounding the alleged crime, the sole counsel arranged with another attorney who had previously been associated with him to be prepared to act as attorney for defendant Baty if counsel was unable to obtain a severance. Counsel announced to the trial court that because of the possible con-

---

1. This last ground was not alleged on the petition but was raised later by brief. The Court of Appeals, however, specifically discussed the alleged conflict of interest in its reported opinion.

2. Transcripts of these proceedings are presented to this Court as respondent's exhibits one (the trial) and two (the motion for new trial).

flict of interest he could not represent both defendants at the time of trial, that he had discussed this with the two defendants and they understood. Whereupon he proceeded to argue the motion for severance which was denied. Both were convicted.

147 Ga.App. 277, 278, 248 S.E.2d 503, 504.

■ A presumption of correctness of findings of fact such as these is created by 28 U.S.C. § 2254(d).[3] The threshold for establishing this presumption is that there be an adequate written indication of the findings made by a court of competent jurisdiction and that the record from which the findings were made supports them and shows the issues involved to have been fully aired. *Thompson v. Linn*, 583 F.2d 739, 741–742 (5th Cir. 1978). These criteria have been met here in the opinion of the Court of Appeals. The transcript of the petitioner's motion for new trial certainly supports these findings. They are, therefore, adopted by this Court for use in these proceedings. 28 U.S.C. § 2254(d); *Thompson v. Linn, supra; Farmer v. Caldwell*, 476 F.2d 22 (5th Cir. 1973).

■ These facts can be augmented by evidence adduced at a hearing held by this Court May 15, 1980, and at the petitioner's motion for new trial in Newton County.[4] On the basis of this record, the Court makes the following findings of fact.

Mr. Baty was originally represented by Mr. William D. Smith. This attorney was retained by the petitioner and his co-defendant to represent them. Mr. Smith represented them in all proceedings prior to trial. He conducted the initial investigation, interviewed the witnesses to be used against his clients, filed a variety of pre-trial motions, reviewed the State's file on the case, mapped out the defense strategy, and appeared on behalf of both defendants at all pre-trial hearings. Mr. Smith frequently consulted and, later, formally associated a second attorney to assist him in the case.

This second attorney, Mr. Charles M. Taylor, eventually represented the petitioner at his trial. His initial association with Mr. Smith on this case was of a very informal nature. The two attorneys had, at one time, shared office space together. At the time of the petitioner's trial, however, both maintained separate offices and separate law practices. Mr. Smith had associated Mr. Taylor on cases previously. In this instance, Mr. Taylor was associated in the early stages of the case to assist in the legal research involved and to act as a consultant and "sounding board" to Mr. Smith. No financial arrangements were made, other than an understanding that Mr. Taylor would be reimbursed for his time at the conclusion of the trial. Mr. Taylor conducted none of the investigation, interviewed

**3.** 28 U.S.C. § 2254(d) provides that the merits of a factual issue decided by a State court shall not be disturbed unless it is established or otherwise appears:

  (1) that the merits of the factual dispute were not resolved in the State court hearing;

  (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

  (3) that the material facts were not adequately developed at the State court hearing; .

  (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

  (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

  (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

  (7) that the applicant was otherwise denied due process of law in the State court proceeding;

  (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

*See also Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

**4.** The Court may consider this transcript in its determinations under the provisions of 28 U.S.C. § 2254(f). The transcript of the trial, similarly, will also be considered under this provision.

none of the government's witnesses, consulted not at all with either defendant prior to the morning of the trial. He did, however, discuss the case in all respects with Mr. Smith many times, and felt he was thoroughly familiar with all aspects of the crime and the case against Baty. He also undertook to view the scene of the events surrounding the crime.

We come now to the heart of the factual controversy here. At some time before trial the defendants' retained counsel, Mr. Smith, determined that a conflict of interest could arise in the event the two defendants went to trial with the same attorney. The conflict would have occurred because of the different versions of the events surrounding the crime being asserted by the two defendants. After discussing the matter with his clients, counsel made a motion for severance of the trials, and requested Mr. Taylor to stand by to represent one of the defendants in a separate capacity in the event the motion was denied. This arrangement was communicated to the defendants without objection by them.

A preliminary hearing was held the day before trial to present the motion for severance. After the denial of the motion, Mr. Taylor undertook to defend Mr. Baty as arranged. The fee agreement discussed between the two lawyers was for Mr. Taylor to keep as much of the retainer previously paid as he thought he had earned, and for him to turn over the portion he allotted to the trial of Mr. Baty to Mr. Taylor. Mr. Taylor subsequently received an additional retainer for the trial work from a friend of the petitioner's. She promised to pay more at a later date. This payment was never received.

At this point Mr. Taylor undertook the sole representation of Mr. Baty. Prior to the date of trial he had not interviewed Mr. Baty. He had not interviewed any witnesses. He had not participated in the initial investigation. On the morning of the trial he spoke to his new client only twenty or thirty minutes. He was satisfied, however, with his grasp of the facts of the case and knowledge of the issues and possible defenses available. This security was based upon his own extensive discussions about the matter with Mr. Smith. The two attorneys had collaborated on cases in the past, and Mr. Taylor trusted Mr. Smith's abilities to investigate the case thoroughly and to portray his findings to him accurately and fully. Mr. Taylor also, it will be recalled, had performed the legal research necessary to prepare for trial. The background provided by Mr. Smith's investigation and consultation with the petitioner included the fact that Mr. Baty had not told him of any material witnesses who could be used for the defense.

## II.

Careful consideration of these facts requires the conclusion that the petitioner has not been denied any rights guaranteed by the Constitution; it is the conclusion of the Court that petitioner was accorded adequate representation by counsel at his trial.

Four of the six allegations made by petitioner relate to the adequacy of counsel's preparation for trial. The record shows, however, that Mr. Taylor was adequately prepared to defend Mr. Baty on the morning of trial by virtue of his extensive discussions of the case with Mr. Smith, as well as his own work done in researching the issues. The separate representation of the two defendants occurred because of anticipated events in the trial itself. Prior to that time the two attorneys were working in concert, and no reason existed for either to distrust the evaluations or representations of the other. The Court therefore deems Taylor to have been justified in his reliance upon his colleague's investigation of the case and pre-trial preparations.[5]

Taylor's familiarity with the case through his discussions with Smith obviated any need to conduct a duplicative and wasteful investigation of his own. Effective counsel need only conduct an investiga-

---

5. It might be noted, also, that petitioner does not make any specific suggestion of prejudice; he only complains that a separate investigation was not conducted.

tion of a case to the extent necessary. *Wilkerson v. United States*, 591 F.2d 1046, 1047 (5th Cir. 1979). These same discussions made any extensive consultations with the petitioner unnecessary. Shortness of time spent with a client does not alone suffice to show ineffective representation. *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir. 1980); *Carbo v. United States*, 581 F.2d 91, 93 (5th Cir. 1978); *Jones v. Henderson*, 549 F.2d 995, 997 (5th Cir. 1977), *cert. denied* 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 103 (1977). See also *United States v. Brown*, 591 F.2d 307, 311 (5th Cir. 1979), where counsel was appointed shortly before trial. The same rationale disposes of counsel's failure to interview witnesses. *Easter v. Estelle, supra.*

Mr. Taylor did not file a motion for continuance when it became clear he would have to take over Mr. Baty's defense. That a new trial might have resulted if such a motion had been made and denied does not state a reason for relief here. Counsel obviously felt such a motion was unnecessary in view of his stated readiness for trial. This was a tactical decision, one entrusted uniquely to him in his role as manager of the case. It is not the place of a federal court to second-guess every move an attorney makes at trial. Counsel is retained to exercise his best judgment in the light of his professional expertise. One may later disagree with a particular decision or stratagem, hindsight may reveal a particular judgment to have been mistaken, even show that counsel's conduct was unwise—these do not alone show ineffective assistance, merely a well-accepted human susceptibility to error. Failure of a trial tactic does not show ineffective assistance of counsel. *United States v. Johnson*, 615 F.2d 1125, 1127 (5th Cir. 1980); *Easter v. Estelle, supra*, at 759; *Cowens v. Wainwright*, 373 F.2d 34 (5th Cir. 1967); *Orr v. Schaeffer*, 460 F.Supp. 964, 968–969 (S.D.N.Y.1978). This Court will not, therefore, scrutinize counsel's every move at trial; the record shows active, well-informed participation and representation by Mr. Taylor at trial and at sentencing.

Petitioner complains particularly that counsel denied him the opportunity to take the stand on his own behalf. The testimony shows at least partial agreement with this tactic by petitioner. However, even if Taylor made the decision alone, he showed sound judgment in his reasoning that petitioner's taking the stand ran the risk of prior convictions being brought to the jury's attention. Also, the introduction of evidence would have meant the loss of the right to conclude final arguments. Ga. Code Ann. § 27–2201. No denial of effective assistance exists in this allegation. *Mays v. Estelle*, 610 F.2d 296, 297 (5th Cir. 1980).

Last, the petitioner asserts that he was denied a fair trial because of an alleged conflict of interest in counsel's representation of him and his co-defendant. The conflict existed in the differing versions of the crime each defendant proposed to give at trial. The Court need not scrutinize any pre-trial events, as petitioner wishes, for this alleged conflict would not have affected either counsels' pre-trial acts. However, it could reasonably be speculated to have affected representation at trial, when cross-examination of a co-defendant would be crucial to the deflation of an incriminating statement. Petitioner cites the existence of conflicts as possibly affecting the zeal with which counsel would pursue a plea agreement, but the testimony was clear that this option was not available in this case. No other reason has been adduced or is evident which would have affected Mr. Smith's enthusiasm in representing one defendant in favor of the other.

Petitioner's allegation of a conflict of interest at trial depends on being able to view Mr. Taylor's prior loyalty to both defendants together as deleteriously affecting his loyalty to the one defendant he represented at trial. An actual conflict having been shown, he asserts, relief must be granted even in the absence of a showing or prejudice. This is certainly the law. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *United States v. Risi*, 603 F.2d 1193, 1195 (5th Cir. 1979);

967

*Zuck v. State of Alabama*, 588 F.2d 436, 439 (5th Cir. 1979); *cert. denied* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979); *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978).

 The Court opines that, in fact, no actual conflict existed. Petitioner predicates his claim on the highly speculative idea that Mr. Taylor's past obligation to work loyally for Baty's co-defendant would, after he undertook to represent Baty alone, remain in some residual form to infect his loyalty for Baty. If anything, this past representation would be advantageous to petitioner, for his counsel would be privy to the co-defendant's case and his ability to defend against a treacherous accusation by him would be enhanced. This situation might give the co-defendant a colorable conflict of interest argument, but the same is not true of Baty. Conversely, petitioner cannot allege the same argument against Mr. Smith, for he never took the stand, for independent reasons, and that obviated any opportunity for Smith to exploit his past intimacy with petitioner's defense.

 However, the Court need not involve itself further in the niceties of a debate on professional ethics. A recent, more exacting standard by which to judge this situation requires that it be dismissed as a ground for relief. While actual prejudice still need not be shown, "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest *adversely affected* his lawyer's performance." *Cuyler v. Sullivan*, —— U.S. ——, ——, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). [Emphasis added, footnote deleted.] This language strikes a compromise between the often impossible task of showing actual prejudice from a conflict, and the rather lenient requirement that only a bare conflict need be shown. A constitutional defect will exist only when it can be demonstrated that a conflict actually affected counsel's behavior in a way detrimental to his client.

Petitioner's case does not survive the application of this standard. Despite the ex-

istence of what is arguably an actual conflict, the evidence nonetheless shows that petitioner received adequate professional representation in the face of overwhelming evidence against him. The evidence will not bear the interpretation that counsel's performance was adversely affected by his past association in the case with Mr. Smith on the co-defendant's behalf. Baty was convicted because of the glaring evidence of his misdeeds. It is doubtful that any lawyer could have engineered an acquittal in this case. No constitutional infraction is demonstrated here.

### ORDER

The petition for the writ of habeas corpus is hereby DENIED.