Kenneth CUMBIE, Petitioner–Appellant,

v.

Harry K. SINGLETARY, Respondent–Appellee.

No. 92–2506.

United States Court of Appeals, Eleventh Circuit.

May 26, 1993.

David A. Davis, Tallahassee, FL, for petitioner-appellant.

Edward C. Hill, Bradley R. Bischoff, Asst. Attys. Gen., Dept. of Legal Affairs, Tallahassee, FL, for respondent-appellee.

Before COX, Circuit Judge, MORGAN and HENDERSON, Senior Circuit Judges.

HENDERSON, Senior Circuit Judge:

Kenneth Cumbie was convicted in 1987 in Florida circuit court of attempting to sexually assault his five year old stepdaughter, Cathy. During the trial Cathy testified via one-way closed circuit television outside Cumbie's presence. The principal issue in this appeal from the denial of his petition for habeas corpus relief by the United States District Court for the Northern District of Florida is whether Cumbie is entitled to the grant of the writ for violation of his Sixth Amendment right of face-to-face confrontation.

## I. BACKGROUND

Cumbie was tried in Washington County, Florida, on a charge of capital sexual battery. Before the trial in September 1987, the prosecutor moved to have Cathy testify from outside the courtroom with the use of closed circuit television.[1] The court held a brief evidentiary hearing on the motion during which a mental health counselor who had worked with the child was a witness. The counselor spoke generally about Cathy's personality and reaction to her alleged abuse and the events that followed. (Tr. 81–84) When asked if she thought that Cathy would suffer at least moderate emotional trauma or harm if required to testify in open court—the approximate language of Fla.Stat. § 92.54(1) (1987)[2]—the counsel-

---

1. The state's "Motion for Use of Closed Circuit Television" did not mention the need for Cathy to testify outside the presence of the defendant. (R. 8, p. 45)

2. Fla.Stat. § 92.54 (1987) provides:

    (1) Upon motion and hearing in camera and upon a finding that there is a substantial likelihood that the child will suffer at least moderate emotional or mental harm if required to testify in open court or that such victim or witness is unavailable as defined in s. 90.804(1), the trial court may order that the testimony of a child under the age of 16 who is a victim of or witness to an unlawful sexual act, contact, intrusion, penetration, or other sexual offense be taken outside of the courtroom and shown by means of closed circuit television.

    (2) The motion may be filed by the victim or witness; the attorney, parent, legal guardian, or guardian ad litem of the victim or witness; the prosecutor; the defendant or the defendant's counsel; or the trial judge on his own motion.

    (3) Only the judge, the prosecutor, the defendant, the attorney for the defendant, the operators of the videotape equipment, an interpreter, and some other person who, in the opinion of the court, contributes to the well-being of the child and who will not be a witness in the case may be in the room during the recording of the testimony.

    (4) During the child's testimony by closed circuit television, the court may require the defendant to view the testimony from the courtroom. In such a case, the court shall permit the defendant to observe and hear the testimony of the child, but shall ensure that the child cannot hear or see the defendant. The judge and defendant and the persons in the room where the child is testifying may communicate by any appropriate electronic method.

    (5) The court shall make specific findings of fact, on the record, as to the basis for its ruling under this section.

or answered in the affirmative. No other evidence was presented.[3]

The state trial court's entire findings of fact were:

Well, I will allow the child to testify by closed circuit TV because I find that there is a likelihood that she would suffer at least moderate emotional or mental harm from testifying in open court.

(Tr. 86) There is no reference in the record to the necessity or propriety of keeping Cumbie from the room in which Cathy testified, or the harm that would be avoided by allowing Cathy to testify in that manner. As stated earlier, neither did the state's motion seek Cumbie's exclusion or claim that Cathy would be traumatized by Cumbie's presence in the room with her. (R. 8, p. 45) Cumbie did not object to the state trial court's ruling.

During the trial the counselor and a physician both related what Cathy had purportedly told them about her sexual contact with Cumbie. The physician also testified that an examination of Cathy's vagina revealed she had been sexually abused, but he could not identify Cumbie as the source of that abuse. During her testimony, Cathy testified about her abuse by Cumbie and told of sexual contact she had with her nine year old brother and fourteen year old male cousin. The counselor and physician also mentioned the encounter with Cathy's brother on cross-examination.

The jury convicted Cumbie of the lesser included offense of attempted capital sexual battery. On direct appeal, the Florida First District Court of Appeal affirmed Cumbie's conviction but remanded for resentencing. *Cumbie v. State*, 539 So.2d 538 (Fla. 1st DCA 1989). The court discussed only the merits of the sentencing issue and stated, "We find no merit to the remaining issues." *Id.* The court did not specifically address or mention Cumbie's claim on appeal that the procedure by which Cathy testified violated his right of confrontation guaranteed by the Sixth Amendment as explained in *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

Cumbie then filed this petition for writ of habeas corpus in the United States District Court for the Middle District of Florida, urging, as he did on direct appeal, that his right to confront adverse witnesses was infringed when Cathy was permitted to testify by way of the one-way closed circuit television outside his presence. The case

---

**3.** The pertinent parts of the counselor's testimony were:

[Direct examination]

Q. Would you relate to the Court please, what your observations of Cathy as to her appearance, her maturity level.....

A. [ ...] The second time I saw her she came in and said uh.... she felt real sad and tired because people kept asking her questions about her daddy and she said that she was just tired of answering questions.

[ ...]

Q. Have you been able to determine from talking to her, how she feels about what has occurred between them?

A. The impression I have is that initially she didn't really think.... didn't think it was anything that was bad which is very common for most young children but then as they began to talk about it and having to answer so many different people the more people involved the more worst she began to feel about it. She seemed to be ..... emotionally appeared to be more upsetting to her, the more she talked about it.... I asked her about talking about it in Court, how she felt about that and she said that she knew that she may have to talk about it and I asked her if she could do that, if she could go to the Courtroom and talk about it front of people and she would just sit in her chair there at Head Start shaking her head and saying no.... no.... no.... and I think at that point she really.... I don't think it was something that she could do.

[ ...]

Q. Based on your training that you have received and based on your experience and based on the interviews you have had with Cathy, do you feel that if she were required to testify in open Court that she would suffer at least moderate emotional trauma or harm.

A. Yes, I do.

[ ...]

[Cross-examination]

[ ...]

Q. Did you talk to her about testifying in front of a TV camera?

A. No sir, I didn't talk to her about testifying in front of the TV Camera.

Q. You haven't asked her about how she is feeling about that?

A. No sir.

(Tr. 81–85) (copied exactly from trial transcript, without "sic" notations) (all ellipses are in original transcript unless bracketed).

was transferred to the Northern District of Florida and referred to a magistrate for a report and recommendation.

While the case was pending before the magistrate the Supreme Court of the United States published its opinion in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), in which the Court detailed the necessary findings which must be made before a child sexual abuse victim may be allowed to testify outside the presence of the defendant. The magistrate requested the parties to address the impact of *Craig* on this case. Cumbie argued that *Craig* clearly demonstrated that he was deprived of his rights under the Confrontation Clause because the state trial court did not comply with the dictates of *Craig*. The respondents maintained that Cumbie was not entitled to the benefit of *Craig* because it was announced after his conviction became final and stated a new rule of law not available to him retroactively, as established in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and its progeny.

The magistrate concluded that 1) *Craig* did not state a new rule of law, so Cumbie was entitled to its protections retroactively; 2) the state trial court erred because it did not make adequate findings of fact to overcome Cumbie's right to face-to-face confrontation as required by *Craig;* 3) even if *Craig* stated a new rule and could not be applied retroactively to Cumbie's case, the trial court's findings still did not satisfy the dictates of *Coy v. Iowa*, which was decided after Cumbie's trial but before his conviction became final; and 4) even though the state trial court committed constitutional error, Cumbie was not entitled to relief because the error was harmless. Both parties filed objections to the magistrate's report and recommendation but it was approved and adopted by the district court, denying relief. This appeal followed.

## II. ISSUES

Cumbie faults the district court's ultimate decision that the constitutional error committed by the state trial court was harmless. The state[4] contends that Cumbie's constitutional claim is barred by the procedural default doctrine because he did not timely object during trial. The state also insists that the district court erred when it held 1) that *Craig* applied retroactively to Cumbie's case and 2) that the state trial court's procedure violated *Coy*.

We address the procedural default issue and the application of *Coy* to the facts of this case. However, since we find constitutional error, we need not reach the question of *Craig*'s retroactivity. Finally, we direct our attention to the harmless error analysis.

## III. STANDARD OF REVIEW

We review the magistrate's factual findings as adopted by the district court for clear error and conclusions of law *de novo*. *See Gates v. Zant*, 863 F.2d 1492 (11th Cir.1989); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir.1988).

## IV. DISCUSSION

### A. Procedural Default

The magistrate did not consider the procedural default issue. Although the state strenuously urges on appeal that Cumbie's claim is barred by this doctrine, the most that can be said about its position in the district court was that it teasingly hinted at the argument. The state asserts that it properly called the issue to the attention of the court and thus preserved it for appeal by including the following paragraph in its discussion of *Coy v. Iowa:*

> It is important to note that in *Coy*, the "(a)ppellant objected strenuously to the use of the screen ..." (Coy, supra at 863), thereby preserving the issue for review, whereas here Petitioner raised no such objection.

(R. 1, Resp.'s Br. in Response to Dec. 18, 1989 Order to Show Cause p. 6) While we are skeptical that this paragraph was even intended to raise the procedural default question, we need not determine whether the reference is sufficient to preserve it for

---

4. For simplicity, Respondent Harry K. Single- tary will be referred to as the "state" hereafter.

appeal because the defense would fail on its merits.

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court formulated the doctrine of procedural default in the context of habeas corpus. If a state defendant fails to advance an argument in state court, or attempts to assert it in an improper manner, and state procedural rules preclude the state courts from entertaining its merits for adequate state law reasons, then the federal habeas corpus court is also precluded from hearing the merits of that claim absent a showing of cause and prejudice. However, even when a defendant fails to object at the trial, the federal habeas corpus court will consider a constitutional issue if the defendant suggests it on direct appeal and the state appellate court does not expressly reject it on adequate and independent state law grounds. *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).

Cumbie did not object to the trial court's order permitting Cathy to testify by closed circuit television transmission or to his remaining in the courtroom while she testified from the outside, but did claim on direct appeal that the procedure violated his Sixth Amendment Confrontation Clause rights as articulated in *Coy v. Iowa.* The state responded, urging that the Confrontation Clause argument should not be considered on appeal because Cumbie waived it by failing to make it at the trial level. (Answer Br., Ex. A. p. 6)

On direct appeal, the Florida First District Court of Appeal only dealt with the point raised by Cumbie relating to his sentencing. It did not specifically address the Confrontation Clause question but simply wrote "We find no merit to the remaining issues." *Cumbie v. State,* 539 So.2d 538 (Fla. 1st DCA 1989). The court apparently considered the merits of the confrontation problem since it did not state specifically that it refused to consider the issue because of state procedural grounds. Therefore, we are bound by precedent to hold

that the state court did not rely on its own procedural default rule and must speak to the merits of the claim in the federal habeas proceeding. *See Harris v. Reed,* 489 U.S. at 263, 109 S.Ct. at 1043; *Campbell v. Wainwright,* 738 F.2d 1573, 1576–77 (11th Cir.1984). Accordingly, even if we assume the state properly raised the procedural default defense in the district court, it would not avoid the necessity of our consideration of the confrontation issue.

### B. Sixth Amendment Claim

The Sixth Amendment to the federal constitution guarantees that "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), the Court held that the "irreducible literal meaning" of this clause guaranteed a defendant face-to-face confrontation with his accusers, even in child abuse cases. *Coy* was decided while Cumbie's conviction was pending on direct appeal and thus affects his case.[5] *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987).

### 1. Coy v. Iowa

In *Coy,* the Supreme Court had for consideration the constitutionality of a state trial procedure designed to protect child witnesses who testify in sexual abuse cases. Pursuant to an Iowa statute, the trial court placed a screen between the defendant and the accusing child abuse victim/witnesses, based on a statutory presumption that the screen was necessary to protect the children from the traumatic effect of testifying in court. After certain lighting adjustments were made in the courtroom, the large screen blocked the defendant from the witnesses' view, but allowed the defendant to dimly observe the witnesses. The Court found that this procedure violated the defendant's Sixth Amendment right to face-to-face confrontation.

---

5. Cumbie's direct appeal was decided March 7, 1989. *Cumbie v. State,* 539 So.2d 538 (Fla. 1st DCA 1989). *Coy* was published on June 29, 1988.

Justice Scalia, writing for the Court,[6] emphasized the "irreducible literal meaning" of the Sixth Amendment, which, " '[s]imply as a matter of English' . . . confers at least 'a right to meet face to face all those who appear and give evidence at trial.' " *Coy*, 487 U.S. at 1021, 1016, 108 S.Ct. at 2803, 2800 (quoting *California v. Green*, 399 U.S. 149, 175, 90 S.Ct. 1930, 1944, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring)). The Court concluded that the screen employed by the Iowa court violated Coy's right to face-to-face confrontation. It noted that the screen "was specifically designed to enable the complaining witnesses to avoid viewing appellant as they gave their testimony," *Id.* 487 U.S. at 1020, 108 S.Ct. at 2803, and that "[i]t is difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter." *Id.* To the extent any exceptions to a defendant's literal right to confront witnesses might be available, the generalized legislative presumption of harm that authorized the screen in this case did not create such an exception. *Id.* at 1021, 108 S.Ct. at 2803.

Justice O'Connor wrote a concurring opinion in *Coy*, in which Justice White joined. She agreed with the Court that the Iowa legislative presumption of harm was not sufficient to defeat the defendant's right to an in-person encounter with a witness, but wrote that states may still take steps to protect child witnesses. To the extent that a trial court "makes a case-specific finding of necessity, . . . the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses." *Id.* at 1025, 108 S.Ct. at 2805. Justice O'Connor cited the Florida statute at issue in this case as an example of a state statute that required such findings. *Id.*

### 2. Applying *Coy*

■ A plain reading of Fla.Stat. § 92.54 (1987) reveals a two-part legislative scheme. First, subsections (1) through (3) provide that a child victim or witness may testify outside the courtroom by closed circuit television if, after a hearing, the court makes a "finding that there is a substantial likelihood that the child will suffer at least moderate emotional or mental harm if required to testify in open court" or that the child is unavailable. Fla.Stat. § 92.54(1) (1987). This procedure contemplates that the defendant and child may be in the same room during the child's testimony. Fla. Stat. § 92.54(3) (1987).[7] Of course, when the defendant and the child witness are in the same room during the child's testimony, the defendant's right to face-to-face confrontation is not a concern. *See Coy*, 487 U.S. at 1023, 108 S.Ct. at 2804 (O'Connor, J., concurring).

The second aspect of section 92.54 allows the court to require the defendant to stay in the courtroom and watch on television while the child testifies from another room.[8] There is no indication in the statute as to when the defendant must remain in the courtroom or what separate judicial findings are a necessary prerequisite to such action.

Clearly, section 92.54(4) affects the defendant's confrontation rights. The procedure appears "specifically designed to enable the complaining witnesses to avoid viewing [the defendant] as they [give] their testimony." *Coy*, 487 U.S. at 1020, 108 S.Ct. at 2802. When the defendant is forced to sit in the courtroom and watch a child testify against him via one-way closed circuit television, "[i]t is difficult to imagine a more obvious or damaging violation

---

**6.** Justice Scalia wrote the majority opinion in which Justices Brennan, White, Marshall, Stevens and O'Connor joined. Justice O'Connor wrote a concurring opinion in which Justice White joined, and Justice Blackmun, joined by the Chief Justice, dissented. Justice Kennedy did not participate in the decision.

**7.** Only the judge, the prosecutor, *the defendant,* the attorney for the defendant, the operators of

the videotape equipment, an interpreter, and some other person who, in the opinion of the court, contributes to the well-being of the child and who will not be a witness in the case may be in the room during the recording of the testimony. Fla.Stat. § 92.54(3) (1987) (emphasis added).

**8.** *See* Fla.Stat. § 92.54(4) (1987), *supra* note 2.

of the defendant's right to a face-to-face encounter." *Id.*

■ The question, then, is whether the state trial court in this case made sufficient individualized findings about the possibility of harm to Cathy to reliably conclude that it was necessary for her to testify outside of Cumbie's presence and overcome the "irreducible literal meaning" of the Confrontation Clause. *Id.* at 1021, 1025, 108 S.Ct. at 2803, 2805. Although four members of the *Coy* majority hinted that there might be no such exceptions to the right of personal confrontation, the two dissenters and two concurring justices believed such a showing could be made. It would have been reasonable for a Florida court after *Coy* to have held that sufficient individualized findings by the trial court could justify leaving Cumbie in the courtroom while Cathy testified from another room.

Several portions of the transcript and the record lead us to agree with the district court that the state trial court failed to make findings sufficient to defeat Cumbie's right to a face-to-face encounter as it was understood after *Coy*. No one at trial even appears to have considered Cumbie's Confrontation Clause rights. The state's "Motion for Use of Closed Circuit Television" did not mention the necessity, nor even request, that Cathy testify outside the presence of the defendant. (R. 8, p. 45) There was no discussion whatsoever during the brief hearing on the state's motion about whether there would be a danger of significant traumatization to Cathy if Cumbie stayed in the courtroom during her testimony. Cathy's counselor did not mention anything about Cathy's feelings toward Cumbie or whether Cumbie's presence in the room with Cathy might make it more or less likely that she would become upset or suffer trauma. *See Glendening v. State,* 536 So.2d 212 (Fla.1988) (discussing adequacy of findings for applying analogous Fla.Stat. § 92.53, allowing videotaping of testimony of child witness, while defendant watched from behind two-way mirror).

Even if we assume that a court after *Coy,* but before *Craig,* would not have known that the specific inquiry and findings necessary to overcome the defendant's right to face-to-face confrontation must actually be relevant to that right, we are still convinced that the trial court's inquiry and findings were constitutionally deficient in this instance.[9] Justice O'Connor wrote that a generalized legislative finding that child abuse witnesses need protection from testifying in the presence of the defendant is insufficient to prevail over the defendant's constitutional rights. However, "if a court makes a case-specific finding of necessity ... the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses." *Coy,* 487 U.S. at 1025, 108 S.Ct. at 2805 (O'Connor, J., concurring). Clearly, some level of analysis that would at least lead to a "case-specific finding of necessity" was required after *Coy.*

■ We simply cannot find any support in the record for the proposition that the state demonstrated, or the trial court properly articulated, any reason to justify Cathy's separation from the defendant during her testimony. There is nothing to indicate that she was afraid of Cumbie or that testifying by closed circuit television would enhance the protection she needed. Rather, the inquiry in this case was little more than the legislative presumption of harm rejected by the Court in *Coy.* The motion, hearing and findings in this case appear from the record to have been merely a rote exercise to conform with the formality of section 92.54, although we are not convinced the court's findings were even sufficient to satisfy the statute. To read the more relaxed standard of Justice O'Connor's concurrence in *Coy* and its requirement of a "case-specific finding of necessity," *Id.,* compels the conclusion that a mere recitation of the "magic words" is not enough to override the defendant's constitutional rights. *See Sochor v. Florida,* 504 U.S. ——, ——, 112 S.Ct. 2114, 2123, 119 L.Ed.2d 326, 342 (1992) (O'Connor, J., concurring). There still must be a "close ex-

---

9. We recognize that the trial court did not have the benefit of *Coy* during Cumbie's trial.

amination of 'competing interests'" that warrants subordinating the constitutional preference for face-to-face confrontation. *Coy*, 487 U.S. at 1024, 108 S.Ct. at 2805. No such examination was conducted in this case.

█ It is true that Justice O'Connor specifically mentioned Fla.Stat. § 92.54(4) (1987) as a statute that might be adequate to satisfy constitutional scrutiny. Unfortunately, that dicta may have lulled some into a false sense of security. Most obviously, section 92.54(4), on its face, does not require any showing whatsoever to justify keeping the defendant in the courtroom while the child testifies by television from another room. Also, even if the statute did comply with Justice O'Connor's understanding of constitutional acceptability, the trial court must still sufficiently examine and apply the statute to protect the defendant's rights. A statute that is facially constitutional does not always guarantee that a particular defendant's rights are adequately protected by it. *See Penry v. Lynaugh*, 492 U.S. 302, 315, 109 S.Ct. 2934, 2945, 106 L.Ed.2d 256 (1989). That is particularly true in this case, because the trial court's mere recitation of the operative statutory language does not strike us as the sort of "specific findings of fact, on the record, as to the basis for its ruling" contemplated by the statute. Fla.Stat. § 92.-54(5) (1987).

Justice O'Connor's reference to section 92.54 in *Coy* was undoubtedly premised on an assumption that the trial court's inquiry would comply with the requirements of subsection 92.54(5), that the court "make specific findings of fact, on the record, as to the basis for its ruling under this section." Such an analysis, if actually conducted by the state trial court, could rise to the level of a "case-specific finding of necessity" that Justice O'Connor believed necessary to overcome the defendant's constitutional rights. *Coy*, 487 U.S. at 1025, 108 S.Ct. at 2805 (O'Connor, J., concurring). We do not consider the state trial court's mere recitation of the statutory language in this case to comply with the dictates of section 92.54(5). Even if, as a matter of state law, the trial court's hearing and finding were sufficient to fulfill the requirements of the statute, the procedure did not in this case adhere to the constitution. *Cf. Penry v. Lynaugh*, 492 U.S. at 318, 109 S.Ct. at 2946.[10]

### 3. Presumption of Correctness

█ Section 2254(d) of Title 28 mandates that a federal habeas corpus court presume the correctness of factual findings made by state courts. Once certain prerequisites are met, the federal court must defer to a state court's findings of fact.[11] However, even if all these conditions are fulfilled, the presumption of correctness disappears if the state proceeding was deficient in one of eight enumerated ways. 28 U.S.C. § 2254(d)(1)–(d)(8); *Bundy v. Wainwright*, 808 F.2d at 1416.

█ Two such deficiencies are apparent from the record before us. First, subsection (d)(3) exempts from the presumption of correctness facts that were not adequately developed at the state court hearing. Second, subsection (d)(8) excludes facts which are not fairly supported by the evidence. For the reasons discussed earlier, we do not believe that the state trial court's factual finding that Cathy would be harmed by testifying in court was sufficiently developed at the hearing or that it was fairly supported by the scant record. Therefore,

10. *See Myles v. State,* 602 So.2d 1278, 1281 (Fla. 1992) (specifically acknowledging that compliance with § 92.54 would not necessarily satisfy *Maryland v. Craig* and requiring Florida courts to conduct inquiries sufficient to conform to that precedent).

11. "There must have been ...:
   (a) a hearing on the merits of a factual issue,
   (b) made by a state court of competent jurisdiction,
   (c) in a proceeding to which the applicant and the state were parties,
   (d) evidenced by a written finding, opinion, or other reliable and adequate written indicia."
   *Bundy v. Wainwright,* 808 F.2d 1410, 1416 (11th Cir.1987). The fourth requirement of written findings or indicia is satisfied if the habeas corpus court has a transcript of the relevant state proceeding. *Thompson v. Linn,* 583 F.2d 739, 742 (5th Cir.1978).

that determination is not entitled to the presumption of correctness. *See Parker v. Dugger,* 498 U.S. 308, 321, 111 S.Ct. 731, 739, 112 L.Ed.2d 812, 826 (1991). The record simply does not sustain the assertion that Cathy would have suffered such a degree of trauma as to make it necessary for her to testify outside Cumbie's presence, even under the lessened burden of the *Coy* concurrence.

### C. Harmless Error

Having found that the state trial court procedure employed in this case did not comport to the constitutional standard mandated by *Coy,* we must next determine whether that omission is harmless to the extent that it would justify denial of relief to Cumbie. In *Coy,* the Court held that the lack of face-to-face confrontation is subject to a harmless error analysis. 487 U.S. at 1021, 108 S.Ct. at 2803. The Court cautioned, however, that "[a]n assessment of harmlessness cannot include consideration of whether the witness's testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence." *Id.* at 1021–22, 108 S.Ct. at 2803–04.

After oral argument was heard in this appeal, the Supreme Court decided *Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), in which it announced the harmless error rule applicable to federal habeas corpus cases alleging state court trial error. Because Cumbie complains of trial error in this habeas corpus proceeding, that is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of the other evidence presented in order to determine whether its admission was harmless," *Arizona v. Fulminante,* —— U.S. ——, ——, 111 S.Ct. 1246, 1249, 113

L.Ed.2d 302, 330 (1991) (part II of opinion of Rehnquist, C.J., for a majority of the Court), we must look to *Brecht* for guidance in weighing the harmlessness of the constitutional error in this case.[12]

Cumbie is entitled to federal habeas corpus relief only if the constitutional error from his trial " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht,* —— U.S. at ——, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Bearing in mind the warning from *Coy* precluding speculation as to the effect on Cathy's testimony if Cumbie had been in the room during her testimony, the relevant inquiry is whether Cumbie can demonstrate that he was " 'actual[ly] prejudice[d]' " by Cathy's testimony. *Id.* (quoting *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986)).

The district court did not employ this harmless error standard. Rather than considering whether Cathy's testimony had a substantial and injurious effect or influence in determining the jury's verdict the district court instead used the harmless error analysis from *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). That test is proper when a defendant's right to cross-examination is limited in violation of his Sixth Amendment confrontation rights. A reviewing court in such a case must evaluate the error for harmlessness by considering "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438.[13]

---

12. We address this issue because we feel that the record is adequately developed and to remand the case to the district court for reconsideration in light of *Brecht* would be a waste of judicial time and resources.

13. We do not believe the *Van Arsdall* test was appropriate in this case, even before *Brecht.* See *Wasko v. Singletary,* 966 F.2d 1377, 1382–83 (11th Cir.1992).

The district court's application of the *Van Arsdall* test led it to find the error harmless. We disagree that such a conclusion is warranted on the record before us under the newly articulated *Brecht* standard.

Particularly important to our review is the tragic evidence that Cathy had suffered sexual abuse at the hands of her nine year old brother and fourteen year old cousin. Had that evidence not been before the jury, but only the evidence of Cumbie's alleged abuse, it would have been more reasonable to believe that the physical evidence of abuse and sexual experiences purportedly related to the testifying counselor and physician by Cathy pointed inexorably to Cumbie. However, that was not the case.

Even from the cold transcript before us, the victim's testimony is forceful and undoubtedly played a large role in the prosecution's case. Excising Cathy's testimony from the record, we cannot say that the jury would have convicted Cumbie based solely on the hearsay testimony and inconclusive physical evidence submitted by the state, particularly when those same state witnesses offered reasonable explanations and alternative sources for the physical evidence and the graphic information Cathy furnished them. Under these circumstances, we find Cumbie was actually prejudiced by Cathy's testimony and that her testimony substantially influenced the jury to convict him. *Brecht,* —— U.S. at —— – ——, 113 S.Ct. at 1721–22.

## V.  CONCLUSION

We agree with the district court that the state trial court committed constitutional error based on the law as decided and in effect at the time Cumbie's conviction became final. However, considering the evidence, we must find that Cathy's testimony outside the presence of the defendant was a substantial factor in Cumbie's conviction. Consequently, we must reverse the district court's judgment that the constitutional error was harmless.

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND to the district court with instructions to grant the writ of habeas corpus unless the state affords Cumbie a new trial within a reasonable period of time.